OLAF POKSYLA AND OTHERS v. ELLEN N.
SUNDHOLM AND ANOTHER.

106 N. W. (2d) 202.

November 25, 1960—No. 37,605.

*Alton J. Olson,* for appellants.
*C. G. Anderson,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from a judgment enjoining and restraining defendants from closing or obstructing a road which traverses part of their land and is used by plaintiffs for ingress to and egress from certain lakeshore lots.

The essential facts may be stated briefly. Defendants and one Maria Nelson, whose interest was later acquired by defendants, were the owners of lakeshore property on Burntside Lake in St. Louis County. On September 6, 1938, they conveyed a lot approximately 100 feet wide along the lakeshore and 550 feet in depth to plaintiff

Emma Kumbula. On September 26, 1938, they entered into a contract for deed to convey a similar lot to plaintiffs Olaf Poksyla and his wife, Anna Poksyla, and on April 28, 1939, they entered into a similar contract to convey a lot to Ray Netland, whose interest has now been conveyed to plaintiffs Werner A. Kaija and Pearl S. Kaija. Warranty deeds were executed to Olaf Poksyla and Anna Poksyla on July 20, 1940, and to Ray Netland on September 11, 1940, upon completion of payment of the purchase price provided for under the contracts for deed.

The contracts and deeds were drafted by defendant Arvid Sundholm, who had been engaged in banking, real estate, and insurance for many years. In either the deeds or the contracts he inserted the following clause:

"It is hereby agreed between the parties of the first part and second part, that for their mutual benefit, for the benefit of the adjacent property owners and for the benefit of the property of any and all of them, that a road may be constructed on aforesaid property but the place of said road shall be designated by the party of second part."

The land to the rear of the lots so sold rises precipitously and the bank consists of rock and boulders, making it difficult, if not impossible, to build a road for ingress to and egress from each lot which would be usable during the winter months.

While the testimony of plaintiffs and defendants is in conflict, we must view the evidence in the light most favorable to the findings of the court, and, thus viewed, the evidence sustains findings that prior to the sale of these lots to plaintiffs or their predecessor defendant Arvid Sundholm assured them that they would have a road for ingress to and egress from their lots from a township road which runs more or less parallel with the lake; that the representations so made were made for the purpose of inducing plaintiffs to purchase the lots; and that, relying thereon, they have improved their lots by building cabins of considerable value thereon. It further appears that, shortly after entering into the contract, Mr. and Mrs. Poksyla and others began building a road which traverses in part land retained by defendants. Defendant Arvid Sundholm was present and assisted in locating the road over

his land. The road so built has been used without objection for over 14 years, and shortly prior to the time when plaintiffs would have acquired an easement by prescription the road was barricaded by defendants, precipitating this action, which was brought for the purpose of enjoining defendants from interfering with plaintiffs' use of such road. The trial court found in favor of plaintiffs, both on the theory of a grant of an easement over defendants' land and an equitable estoppel, and enjoined defendants from interfering with plaintiffs' use of the road. If the decision of the court can be sustained on either theory, there must be an affirmance.

Defendants' main contention is that in the absence of a reformation of the deeds and contracts under which these lots were conveyed the court's finding cannot be sustained, mainly due to the statute of frauds.

We deem it unnecessary to determine whether the court's finding of a grant of an easement, without a reformation of the instruments conveying title, can be sustained. It is probably well to point out, however, that it would have simplified the case considerably if such reformation had been sought.

■ The court's finding of an equitable estoppel is amply supported by the evidence. The doctrine of equitable estoppel is probably as well stated in Dimond v. Manheim, 61 Minn. 178, 181, 63 N. W. 495, 497, as anywhere. In that case this court, speaking through Mr. Justice Mitchell, said:

"The equitable doctrine of estoppel by conduct, which is altogether different from technical legal estoppels in pais, so far from being odious, is a favored doctrine of the courts. Equitable estoppel, in the modern sense, arises from the 'conduct' of a party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience; its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel. Pomeroy,

Eq. Jur., § 802. Horn v. Cole, 51 N. H. 287. While originally the creature of equity, it is now thoroughly incorporated into the law, and is as available in a legal action as in an equitable one; and while at one time the courts hesitated to apply the doctrine so as to give or divest an estate or interest in land, as being opposed to the letter of the statute of frauds, yet it is now well settled that a person may by his conduct estop himself from asserting his title to real property, as well as to personalty, although, as applied to the former, the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity."

While we have not found any case precisely in point in our research, and none has been called to our attention by counsel for any of the parties, cases involving representations by a seller of real estate as to the location of boundary lines are quite common, and by analogy the same principle applies. We have frequently held in such cases that where a seller points out the location of a boundary line of real estate which he is selling, and the buyer, relying upon such representations, is induced to make the purchase, the seller is thereafter estopped from claiming that the boundary was elsewhere.

In Thompson v. Borg, 90 Minn. 209, 213, 95 N. W. 896, 898, we said:

"A party is estopped to deny that a division line between his own and adjoining land is the true boundary line, as against a purchaser of the adjoining land, if he induced him by his representations as to the line to purchase with reference to such line and up to it. [Citing cases.] To constitute such an estoppel, it is not necessary that there should be an actual intent to mislead or deceive."[1]

The same principle applies here. As an inducement to the purchase of these lots by plaintiffs, or their predecessor, defendants represented to them that they would have an adequate road for ingress to and egress from their property, and they actually assisted plaintiffs in locating such road, which was constructed partly over defendants'

[1]See, also, Combs v. Cooper, 5 Minn. 200 (254); Bell v. Goodnature, 50 Minn. 417, 52 N. W. 908; LePak v. Hedberg, 170 Minn. 495, 213 N. W. 40; Lobnitz v. Fairchild, 186 Minn. 215, 243 N. W. 62.

land. By such representations, plaintiffs not only were induced to purchase these lots but improved the same by erecting buildings of substantial value. Defendants should now be estopped to deny their right to use such road.

■ The statute of frauds does not prevent the application of the doctrine of equitable estoppel.[2]

Affirmed.

---

[2]Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495; Bell v. Goodnature, 50 Minn. 417, 52 N. W. 908; see, Annotation, 50 A. L. R. 685; 31 C. J. S., Estoppel, § 59; 37 C. J. S., Frauds, Statute of, § 246b; 19 Am. Jur., Estoppel, § 92.