In the Matter of the Application of Wayne RENNEKE and Jeannette Renneke, a/k/a Jeanette Renneke, husband and wife, as joint tenants and not as tenants in common, to Register the Title to the Following Described Real Estate in Rice County, Minnesota, namely: Lot 13, 14, 16, 17, 18, 19, 20, 22, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, All in Block One, and also, Outlots A and D, all in Jen-Wayne Dells First Addition, Rice County, Minnesota, Wayne Renneke and Jeannette Renneke, a/k/a Jeanette Renneke, husband and wife, as joint tenants and not as tenants in common, applicants, Respondents,

v.

Frank W. SHANDORF, et al., Defendants,

Stanley B. McDonald, et al., Appellants,

Frank Duncan, et al., Gerald J. Fisher, et al., Respondents.

No. C9–85–145.

Court of Appeals of Minnesota.

July 9, 1985.

Lee L. Fossum, Northfield, for Renneke.

Michael W. McNabb, Stevens, McNabb & Stewart, Burnsville, for McDonald.

James R. Martin, Faribault, for Duncan.

Eugene Crosby, Faribault, for Fisher.

Considered and decided by POPOVICH, C.J., PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

The Rennekes brought a title registration suit. By Findings, Conclusions, and Order for Judgment dated October 13, 1983, the trial court determined all claims to the property, but a judgment of registration was not entered until October 26, 1984. The McDonalds, who assert a leasehold interest in a portion of the property, appeal. We affirm.

## FACTS

Mabel and D.J. "Del" Ludlum owned 123 acres with extensive lakeshore on Lake Mazaska, near Faribault, Minnesota. The property was divided into many small lots, which were rented to approximately 30 summer tenants. Appellants Stanley and Steven McDonald and their father, W.J. McDonald, had leased land from D.J. Ludlum since 1963. Stanley and Steven McDonald signed a lease with D.J. Ludlum in August 1971. That lease was not signed by D.J.'s wife, Mabel, before it was recorded.

Wayne and Jeannette Renneke began renting property from the Ludlums in 1970. In September 1972 the Rennekes purchased, by contract for deed, the Ludlum property, except for the small plot on which the Ludlum house stood. The purchase was made "subject to various leases." The Rennekes did not obtain copies of the outstanding leases before execution of the contract for deed.

The Rennekes decided to subdivide the property and offer the smaller parcels for sale to the lessees. They were unable to obtain approval for dividing the property into individual lots as small as those which had been rented. Specifically, an area rented by the McDonalds, Fishers, and Duncans could only be divided into two lots. The Duncans wanted to buy Lot 17, and the Fishers wanted to buy Lot 18. The cabin rented by the McDonalds was located partly on each of those lots.

Frank Duncan testified that he, Wayne Renneke, and W.J. McDonald discussed the prospect of the Duncans buying Lot 17. McDonald said "he would not stand in the way" and "he would remove himself" from the property. Several weeks later, W.J. McDonald again told Frank Duncan he would not stand in the way of the sale of Lot 17. Duncan testified that he would not have bought the property if he had known the McDonalds planned to stay on the lot under the lease.

Wayne Renneke testified that "McDonald decided that he would buy another lot and leave." The attempted sale of another lot was not completed, and McDonald lost interest in buying. McDonald claimed he agreed to move only if he could find and purchase another lot and that he never made an unconditional promise to move or abandon the lease.

The trial court ordered title registered for the Rennekes, on behalf of the Duncans and other property owners, and found the property was not subject to the McDonald leasehold. The McDonalds retained only a tenancy at will, which has since been terminated.

## ISSUES

1. Was the 1971 McDonald lease void for lack of Mabel Ludlum's signature?

2. Does equitable estoppel bar the McDonalds from asserting the lease?

## DISCUSSION

### I

■ The signatures of both husband and wife are needed to convey their homestead. Minn.Stat. § 507.02 (1984). It is clear the Ludlum homestead was located on the 123-acre parcel, and a portion of the homestead was then leased to the McDonalds.[1] It is also undisputed that only D.J. Ludlum signed the 1971 McDonald lease. A conveyance of the marital homestead which does not contain the wife's signature is void. *Dvorak v. Maring*, 285 N.W.2d 675 (Minn.1979).

■ Appellants argue that Mabel Ludlum's signature on the 1972 contract for

---

1. The trial court found that the property leased to the McDonalds was a part of the Ludlum homestead. In their motion for amended findings in the trial court, appellants argued that the land was not a "homestead" protected by the statute. The trial court found persuasive the definition of homestead contained in Minn.Stat. § 510.01 (1984), which focuses on occupancy and extends the statutory protections to the oc-

cupant's family. It was undisputed that D.J. Ludlum occupied a house on the property from which the McDonald leasehold was carved. By operation of statute, D.J. Ludlum's house became Mabel Ludlum's homestead, although she lived apart from her husband.

On appeal the McDonalds do not question whether the land was "homestead" and appear

deed operated as an execution of the Mc-Donald lease as required by Minn.Stat. § 507.02. They analogize this case to instances where only one spouse signed a contract for sale or purchase agreement for the homestead but both spouses then joined in the deed. *See Lussnig v. Investors' Security Association*, 115 Minn. 491, 186 N.W. 574 (1921); *Lennartz v. Montgomery*, 138 Minn. 170, 164 N.W. 899 (1917). Although the contracts for sale in those cases were void, the sales were themselves confirmed by both spouses and were valid because both had joined in the sale. Here, Mabel Ludlum never confirmed the McDonald lease, and it is unclear whether she was aware of its terms or even knew of its existence before the sale to the Rennekes.

Mabel's mere signature on the deed without reference to the specific terms of or area covered by the McDonald lease did not operate as an execution of the lease. *See Dvorak v. Maring*, 285 N.W.2d 675 (Minn. 1979). The trial court properly concluded the lease was void for want of Mabel Ludlum's signature, and her joinder in the sale to the Rennekes did not change that fact.

## II

The trial court also found that the McDonalds were equitably estopped from asserting any purported leasehold interest. The court found that W.J. McDonald assured the Duncans and Rennekes he would give up his lease, and the Duncans then purchased Lot 17 in reliance on that assurance. Appellants argue that the offer to move was explicitly conditioned upon the purchase of another lot.

The findings of the trial court will not be set aside unless clearly erroneous. Minn. R.Civ.P. 52.01. The trial judge had the opportunity to evaluate the testimony and credibility of the parties to the relevant conversations, and he concluded that the Duncans relied upon W.J. McDonald's assurance that he would not stand in the way of their purchase of Lot 17.

to concede that Mabel's signature was required, although they argue that her later participation

 By his conduct, a person may estop himself from asserting his title to real property or personalty, although estoppel will be so applied only if justice clearly requires. *Dimond v. Manheim*, 61 Minn. 178, 181, 63 N.W. 495, 497 (1895); *see also Poksyla v. Sundholm*, 259 Minn. 125, 127, 106 N.W.2d 202, 204 (1960) (quoting *Dimond v. Manheim*). The trial court found that appellants breached their purported lease and assured the Duncans they would not assert the lease, and the Duncans purchased the lot in reliance upon those statements. The findings of the trial court are supported by the record and will not be upset.

## DECISION

The trial court properly registered title to the land without subjecting it to the leasehold asserted by appellants.

Affirmed.

in the sale to the Rennekes redeemed the flawed lease.