_____

No. 95-1185
_____

Ann H. O'Hagan,                          *
                                         *
          Appellee,                      *
                                         *  Appeal from the United States
     v.                                  *  District Court for the
                                         *  District of Minnesota.
United States of America,                *
                                         *
          Appellant.                     *

_____

Submitted:  November 13, 1995

Filed:  June 12, 1996
_____

Before BEAM, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

BEAM, Circuit Judge.


     Ann O'Hagan (Mrs. O'Hagan) filed this action pursuant to section 7426
of the Internal Revenue Code (IRC) to enjoin the Internal Revenue Service
(IRS or government) from selling her husband's (Mr. O'Hagan) interest in
real property which she owned with him as a joint tenant.  After the IRS
administratively levied upon Mr. O'Hagan's property interest in an effort
to collect his delinquent taxes, the district court enjoined the IRS from
selling Mr. O'Hagan's interest.  The IRS appeals, claiming that the
district court lacks jurisdiction to issue the preliminary injunction.  We
affirm in part and reverse in part.


I.    BACKGROUND


     The facts in this case are not in dispute.  The O'Hagans have been
married since 1988.  They own real property, which is their

principal place of residence, in Sunfish Lake, Minnesota (the homestead property). The O'Hagans have owned the homestead property at all times during their marriage as joint tenants with a right of survivorship. In 1988, the O'Hagans obtained a home equity loan in the amount of $400,000. Mr. and Mrs. O'Hagan signed the note, obligating each of them to repay the $400,000. The bank received a mortgage encumbering by lien each O'Hagan's interest in the homestead property.

In the early 1990s, the government imposed an assessment against Mr. O'Hagan for unpaid federal income tax liabilities incurred in 1986, 1987, 1989, and 1991. Although Mr. O'Hagan owes the government $747,761.69 in unpaid taxes, Mrs. O'Hagan has not been assessed any income tax liability and is not obligated to pay any part of her husband's taxes.

On June 8, 1994, the government seized the homestead property after having levied upon Mr. O'Hagan's interest in that property pursuant to section 6331 of the IRC. The government then advertised the sale of Mr. O'Hagan's interest in the real estate, which sale was to occur on November 21, 1994. Mrs. O'Hagan filed a motion for a temporary restraining order and preliminary injunction to enjoin the sale of Mr. O'Hagan's interest in the homestead property. The government challenged the district court's jurisdiction based on the Anti-Injunction Act, 26 U.S.C. § 7421. The district court determined that it had jurisdiction, granted Mrs. O'Hagan's motion for a preliminary injunction, and enjoined the forced sale of Mr. O'Hagan's interest. The government now brings this interlocutory appeal pursuant to 28 U.S.C. § 1292(a).

## II. DISCUSSION

The question before us is whether the district court has subject matter jurisdiction to enjoin the government from selling Mr. O'Hagan's interest in the homestead property. The government

contends that the district court lacks subject matter jurisdiction because the Anti-Injunction Act precludes such an injunction and that none of the exceptions to that Act apply in the present case. After reviewing the litany of applicable state and federal laws, we conclude that the district court has jurisdiction to enjoin the sale of Mr. O'Hagan's right to use and occupy the homestead property, but cannot enjoin the government from conveying Mr. O'Hagan's survivorship interest.

The Anti-Injunction Act (the Act) prohibits federal courts from entertaining any action filed to restrain the assessment or collection of taxes. 26 U.S.C. § 7421(a). The primary purpose of the Act is to facilitate the expeditious collection of taxes by the government. See Enochs v. Williams Packing & Navigation Co., Inc., 370 U.S. 1, 7 (1962). The Act, however, contains several exceptions. 26 U.S.C. § 7421(a). The district court recognized both a statutory exception, 26 U.S.C. § 7426(b)(1), and a judicially crafted exception, Enochs, 370 U.S. at 6-7,[1] to the Anti-Injunction Act. Although the district court relied on the judicially created exception set out in Enochs to support its preliminary injunction, to the extent we affirm its decision we rely, instead, on the statutory exception set out in section 7426.[2]

---

[1]In Enochs, the Supreme Court held that federal courts have jurisdiction to hear cases brought by an allegedly delinquent taxpayer in which the collection or assessment of taxes would be enjoined because: (1) the government cannot prevail on the merits even if the facts and law are examined in the light most favorable to the government; and (2) equity jurisdiction would otherwise exist. 370 U.S. at 7-8.

[2]As we have often noted, we review judgments, not the text of opinions, and thus may affirm on any ground supported by the record regardless of whether it was argued below or considered by the district court. See, e.g., African American Voting Rights Legal Defense Fund, Inc. v. Villa, 54 F.3d 1345, 1356 (8th Cir. 1995), cert. denied, Tyus v. Bosley, 116 S. Ct. 913 (1996); United States v. Sager, 743 F.2d 1261, 1263 n.4 (8th Cir. 1984), cert. denied, 469 U.S. 1217 (1985). In the present case, however, the district court expressly recognized both the statutory exception and the Enochs exception and the government argued in its opening brief that Mrs. O'Hagan did not satisfy either exception.

The statutory exception allows a person, other than the delinquent taxpayer, who claims an interest in or lien on the property levied upon by the government to bring a wrongful levy action. 26 U.S.C. § 7426(a). This action may be brought without regard to whether the property has been surrendered to or sold by the government. Id. This statutory exception, which expressly gives the district court jurisdiction to grant injunctive relief, provides:

> If a levy or sale would irreparably injure rights in property which the court determines to be superior to rights of the United States in such property, the court may grant an injunction to prohibit the enforcement of such levy or to prohibit such sale.

26 U.S.C. § 7426(b)(1). To satisfy this statutory exception, therefore, Mrs. O'Hagan must demonstrate that: (1) she has a right in the levied property superior to that of the government; and (2) her right would be irreparably injured by the forced sale of the levied property.

## A.    Mr. O'Hagan's Rights in the Homestead Property

In order to analyze whether Mrs. O'Hagan has a right superior to that of the government in the levied property, we must first determine Mr. O'Hagan's interest in the homestead property. It is well established that in a levy proceeding, the IRS "`steps into the taxpayer's shoes.'" United States v. Rodgers, 461 U.S. 677, 691 n.16 (1983) (quoting 4 Boris I. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 111.5.4. at 111-102 (1981)). The administrative levy statute only authorizes the IRS to "levy upon all property and rights to property" belonging to the delinquent taxpayer, except certain exempt property which is not at issue in

-4-

the present case. 26 U.S.C. § 6331. In levying upon Mr. O'Hagan's interest in the homestead property, however, the government could not acquire more property rights than those already held by Mr. O'Hagan.

We look to state law to define Mr. O'Hagan's interest in the homestead property. United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985) (stating that the IRC "`creates no property rights but merely attaches consequences, federally defined, to rights created under state law'") (quoting United States v. Bess, 357 U.S. 51, 55 (1958)). In the present case, it is undisputed that Mr. O'Hagan owns the homestead property in joint tenancy with Mrs. O'Hagan. Accordingly, we look to the applicable state law--in this case Minnesota, where the real property is located--to define the property rights upon which the government has levied.

Under Minnesota law, Mr. O'Hagan has an undivided interest, as a joint tenant with Mrs. O'Hagan, in the property. As such, Mr. O'Hagan has a right of survivorship to Mrs. O'Hagan's interest in the joint tenancy property, as well as a present right to use and occupy the real estate. See generally Hendrickson v. Minneapolis Fed. Sav. & Loan Ass'n, 161 N.W.2d 688 (Minn. 1968). Moreover, a joint tenant generally has the right to unilaterally sever the joint tenancy, so long as the joint tenant satisfies

at least one of the statutory methods for doing so.[3]  See Wendt v. Hane,
401

---

[3]Under Minnesota law, a severance of a joint tenancy is legally effective only when:

> (1) the instrument of severance is recorded in the office of the county recorder or the registrar of titles in the county where the real estate is situated; or (2) the instrument of severance is executed by all of the joint tenants; or (3) the severance is ordered by a court of competent jurisdiction; or (4) a severance is effected pursuant to bankruptcy of a joint tenant.

> A decree of dissolution of marriage severs all joint tenancy interests in real estate between the parties to the marriage, except to the extent the decree declares that the parties continue to hold an interest in real estate as joint tenants.

Minn. Stat. § 500.19, subd. 5 (1996 Supp.).

N.W.2d 457, 459 (Minn. Ct. App. 1987). Once the joint tenancy has been severed it converts into a tenancy in common and extinguishes the other joint tenant's right of survivorship.[4] See Hendrickson, 161 N.W.2d at 690-91.

Mr. O'Hagan, however, may not convey his interest in the homestead property without Mrs. O'Hagan's consent.[5] Although joint

---

[4]A joint-tenant spouse who unilaterally severs a joint tenancy in homestead property, however, would nevertheless be precluded from conveying any interest in that homestead property. Minn. Stat. § 500.19, subd. 4 (1996 Supp.); Minn. Stat. § 507.02. Moreover, severing the joint tenancy does not completely destroy the other spouse's survivorship interest because Minnesota provides statutory protection for a joint tenant's survivorship interest in homestead property. Minn. Stat. § 525.145 (1996 Supp.).

[5]According to the dissent, a spouse can unilaterally convey homestead property, thereby severing a joint tenancy, simply by recording an instrument of severance pursuant to Minn. Stat. § 500.19, subd. 5. In a case strikingly similar to the one before us, Judge Kyle expressly rejected the dissent's construction of Minn. Stat. § 507.02. Marshall v. Marshall, 921 F. Supp. 641, 645-46 (D. Minn. 1995) ("To hold that one spouse could deprive the other spouse of this interest by recording a deed after having unilaterally and wrongfully sold the homestead would defeat [the purpose of the homestead law, which is to create a property interest that could not be conveyed without the consent of both spouses]"), vacated on other grounds, 921 F. Supp. 647 (D. Minn. 1996). In light of the clear statutory language prohibiting a unilateral conveyance of homestead property without the written consent of both spouses, Minnesota case law holding that a conveyance of homestead property without the signature of both spouses is void, and the public policy justification for granting extra protection to homestead property, we leave it to Minnesota courts to adopt the dissent's counterintuitive construction of Minn. Stat. § 507.02 if they so chose. See, e.g., Dvorak v. Maring, 285 N.W.2d 675, 677 (Minn. 1979); Renneke v. Shandorf, 371 N.W.2d 12, 14 (Minn. Ct. App. 1985).

tenants are generally free to convey their interest in the joint tenancy, Minn. Stat. § 500.19, subd. 4 (1996 Supp.), spouses who own homestead property--as joint tenants or as tenants in common--are prohibited from conveying their interest, except to the other spouse, without the other spouse's consent, id.; Minn. Stat. § 507.02. Furthermore, Mr. O'Hagan would normally have the right to unilaterally sever the joint tenancy and devise his remainder interest subject to a life estate in Mrs. O'Hagan, see Minn. Stat. § 525.145 (1996 Supp.); but as discussed below, Mr. O'Hagan does not have the right to unilaterally sever the joint tenancy in this particular case. Therefore, Mr. O'Hagan and Mrs. O'Hagan, in effect, each have a life estate with a vested remainder interest.

In addition to imposing limitations upon the transfer of homestead property, Minnesota law does not provide for an absolute right to unilaterally sever a joint tenancy. The Supreme Court of Minnesota has expressly recognized that a joint tenant may be prevented from unilaterally severing a joint tenancy when the other joint tenant has detrimentally relied on its existence. Hendrickson, 161 N.W.2d at 692. As explained in that case:

> If the survivor had taken some irrevocable action in reliance upon the creation or existence of the joint tenancy, or if some consideration was given or received when the joint tenancy was created, it would seem reasonable to insist that unilateral action would not be effective to deprive the passive joint tenant of the rights so created.

Id. Although sparse, the record in the present case, along with common sense and Minnesota law, support our conclusion that Mrs. O'Hagan relied upon the existence of a joint tenancy when she obligated herself to repay the entire amount of the mortgage note. The record demonstrates that Mrs. O'Hagan, through her attorney, argued to the district court that she signed the mortgage note in reliance upon the existence of a joint tenancy. Appellee's App. at 6-9. She specifically referred to the above language in the

Hendrickson case and provided the district court with copies of the deed that originally created the joint tenancy and referred to the $400,000 home equity loan, dated August 24, 1988, which was signed by Mr. and Mrs. O'Hagan. Moreover, common sense dictates that Mrs. O'Hagan would not have agreed to be personally liable for the full amount of the note if she thought she might ultimately have only a one-half interest in the property she pledged as security. At a minimum, Mrs. O'Hagan certainly relied on the fact that it would be her husband making the decision to sever the joint tenancy, not the government or a complete stranger.

Minnesota law also supports Mrs. O'Hagan's reliance on the existence of a vested remainder interest. Minnesota's law on the descent of homestead interests guarantees that Mrs. O'Hagan will inherit her husband's interest in the homestead property if no children, or issue of deceased children, are alive at the time of his death, regardless of how Mr. O'Hagan devises his interest. See Minn. Stat. § 525.145 (1996 Supp.). At the very least, Mrs. O'Hagan is guaranteed a life-estate in the homestead property. Id. Furthermore, Mr. O'Hagan would not have been allowed to bring a partition action under Minn. Stat. § 558.01. The Supreme Court of Minnesota long ago held that the law will not allow a spouse with an interest in homestead property, either as a tenant in common or a joint tenant, to do indirectly through a suit for partition_something that the spouse could not do directly through sale or conveyance. Grace v. Grace, 104 N.W. 969, 971 (Minn. 1905).

Therefore, under the facts of this case, Mr. O'Hagan does not have the right to unilaterally sever the joint tenancy. Accordingly, neither the government nor a third-party purchaser could unilaterally sever the joint tenancy. Without the right to unilaterally sever the joint tenancy or convey the homestead property, Mr. O'Hagan possesses: (1) a present right to use and occupy the property; and (2) a right of survivorship to Mrs. O'Hagan's interest.

**B.    Right to Use and Occupy the Property**

We must determine next whether Mrs. O'Hagan possesses an interest superior to that of the government in Mr. O'Hagan's right to use and occupy the property.  We conclude that she does.

At least one court, in addition to the district court in the present case, has held that the IRS cannot convey a property right that could not have been conveyed under the applicable state law.  Elfelt v. Cooper, 485 N.W.2d 56 (Wis. 1992), cert. denied, 507 U.S. 908 (1993).  In a case factually similar to the one before us, the Wisconsin Supreme Court held that because the tax delinquent spouse would not have been able to convey his interest in the homestead property under Wisconsin law, "the IRS, which merely steps into [the tax delinquent spouse's] shoes, also cannot convey any interest of the jointly held spousal homestead without either [the innocent spouse's] consent or court action."  Id. at 62.  The court concluded that "any conveyance of that interest by the IRS without [the innocent spouse's] consent and without court action is ineffective" and consequently the third-party purchasers "did not obtain and do not now own an interest" in the homestead property.  Id.; see also Rodgers, 461 U.S. at 720 n.11 (Blackmun, J., concurring and dissenting) (stating that even if the tax lien could attach to one spouse's interest in homestead property, "the traditional rule that the lienholder gains only those property rights possessed by the debtor would have precluded a sale").  Similarly in the present case, the government only acquires the property interests, as defined by Minnesota law, held by Mr. O'Hagan.  See, e.g., National Bank of Commerce, 472 U.S. at 722.  Because Mr. O'Hagan could not have conveyed any interest in the homestead property without Mrs. O'Hagan's consent, see Minn. Stat. § 507.02, the government cannot convey Mr. O'Hagan's interest to a third-party purchaser.  Thus, under Minnesota law, Mrs. O'Hagan has a superior right in the property because she can prohibit any

conveyance of Mr. O'Hagan's interest in the homestead property simply by withholding her consent.  Id.

According to the government, it has the authority to convey Mr. O'Hagan's interest under the applicable federal statutes in the IRC, which, it argues, preempt contrary state law.  The government relies primarily on two federal laws that set out an exclusive list of property that is exempt from a federal tax levy.  See 26 U.S.C. § 6334; 26 C.F.R. § 301.6334-1(c). The government also relies on our prior decision in Herndon v. United States, 501 F.2d 1219 (8th Cir. 1974) to support its contention.  The government's reliance on these authorities, however, is misplaced for several reasons.  First, we agree with the government that Mr. O'Hagan's interest in the homestead property is not exempt from a federal tax levy. Therefore, neither the statute nor the treasury regulation cited by the government apply in the present case.  Second, in Herndon we held that an Arkansas homestead law that purported to exempt homestead property from legal process, including liens, could not be used to prevent the government from levying upon and selling a delinquent taxpayer's interest in homestead property.  Id.  In contrast, the homestead statute applicable to the present case actually defines the nature of the property interest itself (i.e., that it is inalienable without the consent of the other spouse). Simply put, Mr. O'Hagan has a property right that is limited by the state's bar against conveyance during the lifetime of his spouse, unless, of course, she consents.  Finally, the Minnesota statute that exempts homestead property from the collection of certain debts--which is analogous to the homestead exemption statute analyzed in Herndon--is not before us in the present case.  See Minn. Stat. § 510.01 (1996 Supp.).

Even if the government could convey Mr. O'Hagan's interest under federal law, Minnesota law nevertheless defines the extent of that property right.  Without the right to sever the joint tenancy or to convey his interest in the homestead property, if lawfully

-11-

severed, Mr. O'Hagan's right to use and occupy the property is a limited, personal right of possession. See Elfelt, 485 N.W.2d at 62 (stating that "the statutory requirement of spousal consent illustrates that the nature of the property interest owned by a spouse in a jointly held homestead is a limited interest"). Neither the government nor a third-party purchaser would be able to exercise this limited right of possession because under Minnesota law only the spouses have this possessory right in homestead property. See Minn. Stat. § 507.02; see generally United States v. Certain Real Property Located at 2525 Leroy Lane, 910 F.2d 343, 351 (6th Cir. 1990) (stating that "the Government may properly acquire only the interest which Mr. Marks held as cotenant by the entireties . . . [but] cannot occupy the position of Mr. Marks in the entireties estate, since the estate is founded on marital union, and the Government obviously cannot assume the role of spouse to Mrs. Marks"), cert. denied, Marks v. United States, 499 U.S. 947 (1991). Therefore, Mr. O'Hagan's possessory interest in the homestead property "wears out" when it is held by another party. This would seem to be the precise scenario contemplated by the phrase that the government "`steps into the taxpayer's shoes but must go barefoot if the shoes wear out.'" Rodgers, 461 U.S. at 691 n.16 (quoting 4 Bittker, ¶ 111.5.4 at 111-102).

During her lifetime, Mrs. O'Hagan retains the right to exclude all people, other than Mr. O'Hagan, from the homestead property. This right derives from the Minnesota statute addressing homestead property and would apply equally to joint tenants and tenants in common. Minn. Stat. § 507.02. Mrs. O'Hagan's right to exclude all persons other than Mr. O'Hagan from using or occupying the homestead property demonstrates that her right is superior to that of the government or a third-party purchaser who would be attempting to exercise a possessory right that is limited and personal to Mr. O'Hagan. Therefore, Mrs. O'Hagan satisfies the first prong of the statutory exception to the Anti-Injunction Act by demonstrating that she has a right superior to that of the

government in Mr. O'Hagan's right to use and occupy the homestead property.

The second prong of the statutory exception to the Anti-Injunction Act requires Mrs. O'Hagan to demonstrate irreparable injury resulting from the forced sale of Mr. O'Hagan's interest in the homestead property. Allowing any person other than Mr. O'Hagan to exercise his right to use and occupy the homestead property would destroy Mrs. O'Hagan's right to exclude all persons other than Mr. O'Hagan from the homestead property. Moreover, as a practical matter, the sale of Mr. O'Hagan's interest would undoubtedly diminish the value of Mrs. O'Hagan's property interest. More fundamentally, monetary relief fails to provide adequate compensation for an interest in real property, which by its very nature is considered unique. See, e.g., Shaughnessy v. Eidsmo, 23 N.W.2d 362, 368 (Minn. 1946) (stating that when an interest in land is involved, the common-law remedy is deemed to be inadequate); Strangis v. Metropolitan Bank, 385 N.W.2d 47, 48 (Minn. Ct. App. 1986) (stating that the property owners "would suffer irreparable harm by the foreclosure of the mortgage on their homestead [because] [r]eal property is unique, which money damages may not adequately compensate").[6] Thus, Mrs. O'Hagan would suffer irreparable injury by the proposed forced sale of Mr. O'Hagan's possessory interest in the homestead property. Accordingly, we conclude that the district court has jurisdiction to enjoin the sale of Mr. O'Hagan's right to use and occupy the homestead property.

---

[6]We emphasize that even the judicial lien foreclosure proceeding set out in 15 U.S.C. § 7403--which might enable the government to sell the entire homestead and compensate the innocent spouse with monetary damages--allows the supervising court equitable discretion as to whether it would authorize the transaction. See Rodgers, 461 U.S. at 706; United States v. Bierbrauer, 936 F.2d 373, 375 (8th Cir. 1991).

## C.  Right of Survivorship

We must next analyze whether Mrs. O'Hagan's interest is superior to that of the government with regard to Mr. O'Hagan's right of survivorship. We conclude that although Mrs. O'Hagan could probably prohibit the conveyance of Mr. O'Hagan's right of survivorship, she cannot demonstrate irreparable injury.  Thus, the government can attempt to convey this interest, subject to the limitations discussed below.

As earlier noted, Mrs. O'Hagan can prohibit the conveyance of an interest in the homestead property under Minnesota law.  See Minn. Stat. § 507.02.  Mrs. O'Hagan has failed to demonstrate how the conveyance of her husband's survivorship interest would cause her irreparable injury.  We recognize that the applicable Minnesota statutes demonstrate a public policy in favor of protecting a spouse's continued occupancy of the homestead.  Hendrickson, 161 N.W.2d at 691 (citing Minn. Stat. §§ 507.02 & 525.145(1)).  This public policy, however, "does not necessarily apply to the remainder interest, which can be disposed of without adversely affecting the right of the surviving spouse to continue in possession and enjoyment for so long as she might live."  Id.  In the present case, therefore, the government can levy upon and attempt to convey a single straw from the proverbial "bundle of interests," namely, Mr. O'Hagan's right of survivorship to Mrs. O'Hagan's interest in the homestead property.

In attempting to convey this solitary interest, however, the government must clearly articulate the precise nature of the interest in the notice of sale.  See 15 U.S.C. § 6335(b) (stating that "[s]uch notice shall specify the property to be sold, and the time, place, manner, and conditions of the sale thereof").  First, the government must make it clear that the only interest in the homestead property subject to sale is Mr. O'Hagan's survivorship interest.  The third-party purchaser, in fact, would simply be

-14-

gambling that Mrs. O'Hagan will predecease Mr. O'Hagan because if Mr. O'Hagan were to die first, the right acquired by the third-party purchaser would vanish in its entirety.[7]

Second, we emphasize, as the government must in the notice of sale, that this solitary interest is subject to a further, and substantial limitation. Ironically, once Mr. O'Hagan's right of survivorship is conveyed by the government to a third-party purchaser, that interest cannot be recorded because recordation would sever the joint tenancy, thereby extinguishing the very right of survivorship that was acquired. See Minn. Stat. § 500.19, subd. 5 (1996 Supp.).[8] Moreover, as discussed above, Mr. O'Hagan does not have the right to unilaterally sever the joint tenancy and thus neither the government nor a third-party purchaser would have that right.

Finally, we note that the third-party purchaser would acquire Mr. O'Hagan's obligations under the mortgage if Mrs. O'Hagan were to predecease Mr. O'Hagan. This fact must also be made clear to potential purchasers. Therefore, it is vital that the government recognize and accurately articulate the precise, and limited, nature of the interest it would be conveying in the present case. See Herndon, 501 F.2d at 1223 (requiring, as a matter of fairness under the circumstances, that the government advise all prospective purchasers that the real property is being sold subject to the

---

[7]Furthermore, neither the government nor a third-party purchaser would acquire Mr. O'Hagan's statutorily protected right of survivorship in the homestead property--e.g., to a life estate--because this protection is limited to a surviving spouse. Minn. Stat. § 525.145 (1996 Supp.).

[8]This anomaly would not occur under the common-law rule, which assumes that a conveyance severs a joint tenancy because the act of conveyance destroys at least one of the four unities (time, title, interest, or possession). In abrogating the common-law rule, Minnesota has apparently replaced the act of conveyance with the act of recordation as the triggering event that severs a joint tenancy.

homestead interest in the other spouse and that the government inform all prospective purchasers about the litigation in the case). Although we believe it is highly improbable that a fully-informed third-party purchaser would buy such a limited property right, we acknowledge that the government does have a valid lien on Mr. O'Hagan's survivorship interest, which, while held by the government, provides protection for the government without affecting Mrs. O'Hagan's interests. See William T. Plumb, Jr., Federal Liens and Priorities--Agenda for the Next Decade II, 77 Yale L.J. 605, 638 (1968) (suggesting "that the tax lien, if and when it cannot be satisfied from other sources, should be fastened to the property by appropriate judicial proceedings within the period of limitations, with actual enforcement by sale deferred until the survivorship contingency is resolved").

Lastly, we are not called upon to resolve the merits of the present case, except to the extent necessary to determine whether Mrs. O'Hagan has satisfied the statutory exception to the Anti-Injunction Act.[9] We conclude that Mrs. O'Hagan has adequately demonstrated that the district court has jurisdiction to issue a preliminary injunction to prevent the sale of Mr.

---

[9]Without deciding whether it is essential to this type of case, we conclude that the four factors normally considered in a preliminary injunction claim also have been satisfied regarding the sale of Mr. O'Hagan's right to use and occupy the homestead property. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). In Dataphase, we held that a court considers four factors when evaluating a motion for a preliminary injunction: (1) whether there is a substantial threat that the plaintiff will suffer irreparable harm if the relief is not granted; (2) whether the irreparable harm would outweigh any potential harm in granting the preliminary injunction; (3) whether there is a substantial probability that the plaintiff will prevail on the merits; and (4) the public interest. Id.

O'Hagan's right to use and occupy the homestead property.[10]  We do not express any

_____

[10]Our conclusion is consistent with the Supreme Court's decision in <u>Rodgers</u>, in which the Court held that homestead property could be sold--pursuant to the judicial lien foreclosure procedure under section 7403 of the IRC--to satisfy tax obligations owed by only one spouse.  The Court also acknowledged, however, that its decision did not affect the traditional rule that the homestead property rights of an unindebted spouse could not be sold pursuant to an administrative levy, such as the IRS is attempting here, to satisfy the other spouse's tax liability.  <u>Rodgers</u>, 461 U.S. at 702-03 n.31.

opinion as to the likely outcome of a judicial lien foreclosure proceeding under section 7403 of the IRC.  See Rodgers, 461 U.S. at 703-12; United States v. Bierbrauer, 936 F.2d 373, 375 (8th Cir. 1991).

## III.  CONCLUSION

The district court has subject matter jurisdiction to enjoin the forced sale of Mr. O'Hagan's right to use and occupy the homestead property, but cannot enjoin the government from attempting to sell Mr. O'Hagan's right of survivorship, subject to the limitations set forth in this opinion.  Accordingly, the district court's order granting Mrs. O'Hagan's motion for a preliminary injunction is affirmed in part and reversed in part.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully dissent.

The court decides this case on a ground never presented to it, namely, that the taxpayer's inability to alienate his interest in homestead property without Mrs. O'Hagan's consent gives her a right in property, superior to the government's interest, that will be irreparably damaged by a sale of the taxpayer's property.  Mrs. O'Hagan did assert below and in this court that the taxpayer's interest was not alienable without her consent, but not in order to demonstrate that she had an interest in the taxpayer's property superior to the government's.  Rather, she did that in an effort to show that her right to veto, as it were, any alienation by the

-18-

taxpayer meant that the government could not convey title to the taxpayer's interest at a tax sale.

In other words, her argument was that the government can by levy acquire no more rights in property than the taxpayer had, and, since the taxpayer could not alienate his interest without his wife's consent, neither can the government. See, e.g., United States v. Rodgers, 461 U.S. 677, 690-91 (1983). That argument itself has a certain syllogistic appeal and presents a nice question, but, as I understand it, it is a question that the court does not decide today. It is, moreover, entirely irrelevant to the case.

The district court accepted Mrs. O'Hagan's argument and granted her motion for an injunction based on Enochs v. Williams Packing and Navigation Company, Inc., 370 U.S. 1 (1962). That case established the principle that an injunction against a tax levy and sale can issue if (1) the government cannot prevail on the merits even if the facts and law are examined in the light most favorable to the government and (2) irreparable harm to the property owner would ensue if the sale were allowed to proceed. Id. at 6-7. But Enochs has no application to this case.

First of all, the benefit of Enochs may extend only to the taxpayer, not to affected third parties. In fact, Mrs. O'Hagan conceded this proposition at oral argument in the district court. Enochs requires, moreover, an inquiry into whether the government can prevail on the merits of the tax claim, not whether the taxpayer has any interest in the property that can be levied on and sold. Id. at 7. The district court therefore focused on the merits of the wrong issue. The relevant question under Enochs is whether the taxpayer might conceivably owe taxes, and it does not seem to have been controverted that the taxpayer in this case owes taxes. The district court therefore erred in relying on Enochs as

-19-

a way to overcome the prohibition of the Anti-Injunction Act, 26 U.S.C. § 7421(a).

Because it found Enochs applicable and satisfied, the district court did not address the question of whether 26 U.S.C. § 7426(b)(1) might provide a basis for an injunction. Indeed, this possibility was never mentioned until the government itself raised it in its brief filed in response to the plaintiff's brief in support of her motion for an injunction below. Even on appeal the plaintiff makes only one reference in her brief to this statutory provision, and then in an attempt to demonstrate what is plainly not so, namely, that the district court relied on it in deciding the case. And, more to the point, the plaintiff has never made an effort to identify what interest she had in the taxpayer's property that was superior to the government's, much less has she ever asserted that that very interest was the taxpayer's inability unilaterally to convey his interest in the residence. This last is a theory that the court constructed on its own.

The court therefore decides this case on a principle never presented to it and without giving the government the opportunity to convince it to the contrary. Perhaps that is partly because the government, in an effort to rebut Mrs. O'Hagan's argument that it could not sell the taxpayer's interest in the residence, has already advanced its best argument to the contrary, namely, that the district court misconstrued the relevant Minnesota statutes. But there may well be other arguments that the government could have advanced against the court's holding, and at the least it should have been given a chance to make them. In any case, I suggest with respect that the court has indeed misread the applicable Minnesota law.

In my view, Minnesota statutes do give a spouse who jointly owns homestead property the right unilaterally to sever the joint tenancy by conveyance. That power is conferred by the portion of

Minn. Stat. Ann. § 507.02 that allows joint owners of homesteads to make "a severance of a joint tenancy pursuant to section 500.19," that is, by simply recording an instrument of severance (presumably either a deed to a third party or to the grantor) in an appropriate governmental office. See Minn. Stat. Ann. § 500.19.5(1). Such an instrument is "valid without the signatures of both spouses." See Minn. Stat. Ann. § 507.02.

Section 507.02 was amended in 1979 specifically to allow such severances, perhaps partly in response to Hendrickson v. Minneapolis Federal Savings and Loan Association, 161 N.W.2d 688, 691 (Minn. 1968), which had held, construing the former version of the statute, that a joint tenancy in homestead property could not be severed by a conveyance to a third party by one of the cotenants. The provisions of Minn. Stat. Ann. § 500.19.4(a) are not to the contrary, because they must be taken to refer only to those portions of § 507.02 that require the consent of a spouse to a conveyance. The first paragraph of § 507.02 allows unilateral severance; it is the second paragraph that requires spousal consent to certain kinds of conveyances. Any other construction of the relevant statutes would render the first paragraph of § 507.02 difficult to comprehend.

Plaintiff evidently believes (and perhaps the court does too) that § 507.02 merely confers on a joint owner of a homestead property the power to convert the joint tenancy into a tenancy in common. That is certainly one way of severing a joint tenancy, or one ultimate result to which a severance may lead. But the statute speaks generally of a right to sever, and the Minnesota cases quite clearly recognize, as do cases from other common-law jurisdictions, that one way to sever a joint tenancy is for one cotenant to convey his or her interest to a third party. See, e.g., Application of Gau, 41 N.W.2d 444, 447 (Minn. 1950). If the legislature had intended the scope of the statute to be as narrow as the plaintiff urges, it could easily have said so. It did not.

-21-

The court holds that even if the taxpayer had a unilateral right to alienate his interest in the jointly held homestead, that general right is restrained by the principles announced in Hendrickson. But that case held, at most, in relevant part, that the survivorship feature of a joint tenancy could not be destroyed by the unilateral act of one joint tenant if another tenant had somehow acted in reliance on the continuing existence of that survivorship feature. Hendrickson, 161 N.W.2d at 692. There is a good argument that this is only dictum: The Minnesota Supreme Court said simply that "it would seem reasonable to insist" that this was so, id. But assuming arguendo that the court correctly describes the holding in Hendrickson, it is an extraordinary holding indeed. In fact, it is evidently unique.

The ordinary rule is that joint tenants take the risk that their cotenant will alienate his or her interest and destroy their right of survivorship. This circumstance alone provides some basis for believing that the Minnesota Supreme Court might overrule this aspect of Hendrickson if given the opportunity. Furthermore, the holding in Hendrickson was based in part on the fact that the version of § 507.02 in effect when the case was decided did not allow for unilateral severance of a joint tenancy in a homestead property by deed to a third person. Since it now does, and since it contains no exceptions to the joint tenant's power to sever, the Minnesota Supreme Court might well hold that the legislature had rejected the holding in Hendrickson.

Finally, an application of Hendrickson, as the court interprets it, will not lead to the result that Mrs. O'Hagan urges. We simply do not know whether Mrs. O'Hagan would have signed the mortgage note if she had anticipated the destruction of the survivorship feature of her cotenancy with her husband. There is no evidence in the record one way or the other on this point, so there is no basis for the court's finding that Mrs. O'Hagan acted in reliance on the continued existence of her right of

survivorship.  She has the burden of proof on this issue, and it cannot be satisfied by conjecture.  In fact, there is every reason to believe that she would have signed the note anyway, because, since the residence was homestead, if she survives her husband, she would be entitled to at least a life estate, and perhaps to a fee simple, even without the presence of a survivorship feature in the ownership arrangement.  See Minn. Stat. Ann. § 524.2-402(a).  Even if she eventually received only a life estate, that could be the near equivalent of a fee simple, depending on when Mrs. O'Hagan became entitled to exclusive possession.

Mrs. O'Hagan therefore has no right in the taxpayer's property that is superior to the government's.  What is more, she cannot carry her burden of showing that she will be irreparably injured by a tax sale.  The court asserts that Mrs. O'Hagan has a right to exclude anyone but Mr. O'Hagan from the residence, and that the loss of this right occasioned by a sale to a third party is irreparable.  But that proves too much, because such a loss is attendant upon a sale of any commonly-held property interest. The possibility that a cotenant might sell is a risk that inheres in coownership generally and freights the property rights of all cotenants (except tenants by the entireties).

The court also maintains that the sale of the taxpayer's interest would undoubtedly diminish the value of Mrs. O'Hagan's interest.  This is a dubious proposition at best.  In fact, her interest might well become more valuable, since it is not likely that any buyer of her husband's interest would move in with her.  Mrs. O'Hagan would thus have the exclusive use of the premises, and she could invite her husband to live with her.  Even if a sale did diminish the value of her property, that would simply give her a right to an action for money damages under 26 U.S.C. § 7426(b)(2)(C).

The court responds that monetary relief can never provide adequate compensation for the loss of an interest in real property. But the court cites only Minnesota state-law authority for this proposition, and the relevant question is the meaning of a federal statute. No federal case is marshaled in support of this extraordinary proposition, because none can be. In fact, the principle that the court adopts would evidently be applicable in every case under 26 U.S.C. § 7426 that involves a levy on realty. This takes a greater bite out of the levy statute than Congress could possibly have intended. Reliance on a state-law equitable aphorism that supplies the basis for extraordinary relief in cases involving land contracts is simply not at home in a federal tax case.

The most fundamental objection, however, to the court's holding is that the court fails to connect Mrs. O'Hagan's alleged injuries to the allegedly superior property interest that she has, namely, her right to restrain the taxpayer's alienation of his interest. The injuries that the court identifies are injuries to her right to possess and enjoy her own interest, not to her right to withhold consent to her husband's conveyance. Such injuries do not qualify her for relief under the statute.

For the foregoing reasons, I believe that the district court erred in granting the injunction prayed for in this suit. I would therefore reverse the court's judgment and direct it to dismiss the motion for injunction for lack of jurisdiction in the district court to grant it.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-24-