**In re Kenneth R. HERMANN, Wendy K. Hermann, Debtors.**

**Bankruptcy No. 97–35187.**

United States Bankruptcy Court, D. Minnesota, Third Division.

Sept. 1, 1998.

Tracy Martinez, St. Paul, MN, for Movant.

Kenneth Keate, St. Paul, MN, for Debtor.

**ORDER**

DENNIS D. O'BRIEN, Chief Judge.

This matter is before the Court on objection by the Debtors to the claim of the Department of the Treasury, Internal Revenue Service, Amendment No. 2 to the Proof of Claim dated September 29, 1997, by the Department of the Treasury—Internal Revenue Service, filed on May 13, 1998. The filed claim includes a secured claim in the amount of $13,304.01, to which the Debtors object. Hearing was held on the objection on July 14, 1998. The Court, having considered and reviewed the evidence presented at the hearing; having reviewed and considered the arguments and briefs of counsel; and, being fully advised in the matter, now makes this ORDER pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I.

The Debtors filed for relief under 11 U.S.C. Chapter 13 on August 5, 1997. The IRS filed its claim in the estate September 29, 1997, subsequently amended by filing on May 13, 1998. Part of the claim was filed as a secured claim in the amount of $13,304.01, based on a tax lien filed in Ramsey County on May 17, 1995, for the unpaid income tax liabilities of Debtor Wendy Hermann for the year ending December 31, 1991. The filing of the tax lien resulted in the lien attaching to Wendy Hermann's joint tenancy interest in the homestead of the Debtors. Kenneth Hermann is the other joint tenant, and is not liable for the tax.

At bankruptcy filing, the Debtors' equity in the homestead, disregarding the tax lien, was $25,808.02. The IRS asserts that the value of its lien is one half that amount, $12,904.01, which the IRS claims is the value of Wendy Hermann's joint tenancy interest in the homestead. The Debtors claim that the IRS has produced no evidence of value of Wendy Hermann's joint tenancy interest in the homestead, and, that the Debtors' evidence shows the interest to have no value. The Debtors argue that the portion of the IRS claim filed as a secured claim, should be allowed as a general unsecured claim.

## II.

The allowed amount of the IRS secured claim is determined by application of 11 U.S.C. § 506(a), which provides:

506. Determination of secured status

■ (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed

claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Generally, a creditor whose claim is secured has an allowed secured claim in the bankruptcy case of the debtor to the extent of the value of the collateral securing the claim. The creditor has an unsecured claim for any remaining balance of the claim. The Debtors have elected to retain their homestead, and seek "cram down" of the IRS allowed secured claim to zero.

■ Under § 506(a), the value of property retained in the exercise of Chapter 13's "cram down" option is the cost the debtor would incur to obtain a like asset for the same proposed use. *Associates Commercial Corporation v. Rash,* —— U.S. ——, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). The burden is on the creditor to establish the allowed amount of the creditor's secured claim.

An appropriate first step in valuation of collateral that secures a claim, is to identify the collateral. In this case, the collateral is *Wendy Hermann's individual joint tenancy interest* in the homestead of the Debtors. The IRS offers as proof of the allowed amount of its secured claim, the undisputed equity in the Debtors' homestead. The IRS argues that the value of Wendy Hermann's individual joint tenancy interest is one half of the equity. The Debtors argue that Mrs. Hermann's interest has no value; or, at the very least, that the IRS has demonstrated none.

■ Without the right to unilaterally sever the joint tenancy, the interest of a homestead joint tenant spouse in Minnesota is limited to: (1) possession: and, (2) a right of survivorship to the other joint tenant's interest. See: *O'Hagan v. United States,* 86 F.3d 776, 781 (8th Cir.1996). Here, Mrs. Hermann does not have a right to unilaterally sever the joint tenancy with Mr. Hermann.[1] Accord-

---

1. A joint tenant may not unilaterally sever a joint tenancy where the other joint tenant has detrimentally relied on its existence. *See, Hendrick-*

*son v. Minneapolis Fed. Sav. & Loan Ass'n,* 281 Minn. 462, 161 N.W.2d 688 (1968). Obligating oneself to repay an entire mortgage note under-

ingly, her interest is one of possession with right of survivorship.

The Debtors, citing *O'Hagan*, argue that Mrs. Hermann's right to possession, as homestead joint tenant spouse, has no value because the right cannot be transferred to third parties.

> Without the right to sever the joint tenancy or to convey his interest in the homestead property, if lawfully severed, Mr. O'Hagan's right to use and occupy the property is a limited, personal right of possession. See *Elfelt*, 485 N.W.2d at 62 (stating that "the statutory requirement of spousal consent illustrates that the nature of the property interest owned by a spouse in a jointly held homestead is a limited interest"). Neither the government nor a third-party purchaser would be able to exercise this limited right of possession because under Minnesota law only the spouses have this possessory right in homestead property. See Minn.Stat. § 507.02; see generally *United States v. Certain Real Property Located at 2525 Leroy Lane*, 910 F.2d 343, 351 (6th Cir.1990) (stating that "the Government may properly acquire only the interest which Mr. Marks held as cotenant by the entireties ... [but] cannot occupy the position of Mr. Marks in the entireties estate, since the estate is founded on marital union, and the Government obviously cannot assume the role of spouse to Mrs. Marks"), cert. denied, *Marks v. United States*, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991). Therefore, Mr. O'Hagan's possessory interest in the homestead property "wears out" when it is held by another party. This would seem to be the precise scenario contemplated by the phrase that the government " 'steps into the taxpayer's shoes but must go barefoot if the shoes wear out." ' *Rodgers*, 461 U.S. at 691 n. 16, 103 S.Ct. at 2141 n. 16 (quoting 4 Bittker, ¶ 111.5.4 at 111–102). *O'Hagan*, 86 F.3d at 782.

Citing *O'Hagan*, the Debtors argue that there likely is no market value to her right of survivorship either. A third party purchaser would simply be gambling that Mr. Hermann would predecease Mrs. Hermann. A third party could not record the acquired interest. And, finally, a third party purchaser would acquire Mrs. Hermann's mortgage liability if Mr. Hermann were to predecease her. See: *O'Hagan v. United States*, 86 F.3d 776, 783, 784 (8th Cir.1996). The *O'Hagan* court observed:

> Although we believe it is highly improbable that a fully-informed third-party purchaser would buy such a limited property right, we acknowledge that the government does have a valid lien on Mr. O'Hagan's survivorship interest ...

*O'Hagan*, 86 F.3d at 784.

While *O'Hagan* provides a complete and accurate analysis of the value of spousal joint tenancy interests in homestead property to third parties, the *O'Hagan* rationale does not apply to this case in valuation of the IRS § 506(a) secured claim. *O'Hagan* involved an attempted tax lien foreclosure on the O'Hagans' homestead, not a § 506(a) "cram down" valuation of a secured claim. In that case, the non taxpayer joint tenancy spouse claimed that the value of her interest in the property was greater than the value of the IRS tax lien. The value of the tax lien was not based on replacement cost of the liened property interest to the taxpayer joint tenant.

Valuation of a secured claim in connection with the Chapter 13 "cram down" is based on what the debtor, who has elected to retain the property, would be willing to pay for replacement property. Valuation is from the debtor's perspective, not from the creditor's. It is not based on what a dissimilar stranger might be willing to pay for the property. "[T]he value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer *in the debtor's ... situation* would pay to obtain like property from a willing seller". *Associates Commercial Corporation v. Rash*, ——— U.S. ———, ———, 117 S.Ct. 1879, 1884, 138

---

taken with the other joint tenant of the mortgaged property constitutes detrimental reliance on the existence of the joint tenancy. *O'Hagan*, 86 F.3d at 781. Mr. Hermann joined in a mortgage note and deed with respect to the property with Mrs. Hermann in April of 1994. The mortgage remains unpaid, and Mr. Hermann is jointly and severally liable on the note.

L.Ed.2d 148 (1997), emphasis added. "In sum, under § 506(a), the value of property retained because the debtor has exercised the § 1325(a)(5)(B) "cram down" option is the cost *the debtor would incur* to obtain a like asset for the same 'proposed . . . use.' " *Associates Commercial Corporation v. Rash,* — U.S. —, —, 117 S.Ct. 1879, 1886, 138 L.Ed.2d 148, emphasis added.

■ There can be no willing buyer in Mrs. Hermann's situation to measure replacement value to her, since the benefits of joint tenancy ownership of homestead property by spouses is unique to the spouses. Indeed, Mrs. Hermann is incapable of replacing her interest herself without the cooperation of Mr. Hermann. But, that does not mean that her interest in the property has no replacement value to Mrs. Hermann. The uniqueness of her interest and its irreplaceable nature enhance its value to her rather than detract from it.

The Supreme court, in *Associates Commercial Corporation v. Rash,* observed:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property . . . .

> *Associates Commercial Corporation v. Rash,* — U.S. at — n. 6, 117 S.Ct. at 1886, n. 6.

Here, one half the total equity in the property, disregarding the IRS lien on her interest, is prima facie proof of the replacement cost of Mrs. Hermann's interest in the joint tenancy homestead property to her, in valuation of the IRS allowed secured claim under § 506(a) upon her election to retain the property. The Debtors' evidence demonstrates lack of value of her unique interest to others, not replacement cost to Mrs. Hermann; and, the evidence is insufficient to rebut the prima facie proof offered by the IRS.

Accordingly, the replacement cost to Mrs. Hermann of her joint tenancy interest in the homestead of the Debtors is one half the total equity in the property, which is $12,904.01, disregarding the IRS lien. That is the allowed amount of the secured claim of the IRS pursuant to § 506(a) valuation.

### III.

Based on the foregoing, it is hereby ORDERED: the Debtors' objection to the filed claim of the Internal Revenue Service, Amendment No. 2 to the Proof of Claim dated September 29, 1997, by the Department of the Treasury—Internal Revenue Service, filed May 13, 1998, is partially sustained and partially overruled. That part of the IRS claim filed as a secured claim in the amount of $13,304.01, is allowed as a secured claim in the amount of $12,904.01.