**UNITED STATES of America,
Appellant,**

v.

**Cecil BIERBRAUER and Judy
Bierbrauer, Appellees.**

**No. 90–5298.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1991.

Decided June 19, 1991.

William Estabrook, Dept. of Justice, Washington, D.C. (Shirley Peterson, Asst. U.S. Atty. Gen., Gary Allen, Charles Brookhart and Rosemary Schrauth, Dept. of Justice, Washington, D.C., on brief), for appellant.

Stanley Mosio, St. Paul, for appellees.

Before LAY, Chief Judge and McMILLIAN and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

This appeal involves the United States' efforts to force the sale of a house occupied by a Minnesota couple in order to satisfy a tax debt owed by the husband. Title to the house, located at 17370 Hiawatha Beach Drive, Wyoming, Minnesota, is currently in the name of Judy Bierbrauer. However, in 1977, when Cecil Bierbrauer's tax delinquency accrued,[1] the house was owned by both husband and wife as joint tenants. The question presented in this appeal is whether the District Court erred when it granted summary judgment in favor of the Bierbrauers in the government's foreclosure suit. We hold that it did; accordingly, we reverse and remand to the District Court with instructions to enter judgment in favor of the United States.

Section 7403 of the Internal Revenue Code authorizes a federal district court to order a sale of property in which a delinquent taxpayer has an interest in order to satisfy that taxpayer's debt. A district court may do so even though an innocent third party also has an interest in the property, so long as the third party receives compensation. 26 U.S.C. § 7403(c); *United States v. Rodgers*, 461 U.S. 677, 693–94, 103 S.Ct. 2132, 2142–43, 76 L.Ed.2d 236 (1983).

It is of no help to the Bierbrauers that a conveyance on January 30, 1978, left the property solely in the name of Judy Bierbrauer. That conveyance, through a straw for nominal consideration, rendered Cecil Bierbrauer insolvent, by his own admission. A. 60. The transaction would normally be a fraudulent conveyance under Minnesota law. See Minn.Stat.Ann. §§ 513.21, 513.23 (1945) (amended 1987 with no material change in substance, see Minn.Stat.Ann. § 513.41 *et seq.* (1990)). In the government's cross-motion for summary judgment, it sought to have the conveyance set aside as fraudulent, returning title in the property to the status quo ante—a house and lot owned jointly by Cecil and Judy Bierbrauer.

The District Court assumed but did not decide that the conveyance was in fact fraudulent. Our resolution of the case requires that we do more. It is clear on the record before us that the conveyance was fraudulent as a matter of Minnesota law. The consideration for the conveyance was only one dollar. A. 53. Cecil Bierbrauer admitted that the conveyance left him with no significant assets. A. 60, 62. At the time of the transaction, the Bierbrauer Construction Corporation had failed to pay

---

1. The Bierbrauer Construction Corporation, owned by Cecil Bierbrauer and his brother Dwight, failed to pay federal employment taxes for the second, third, and fourth quarters of 1977. A notice of delinquency in the amount of $14,526.33 was issued to Cecil Bierbrauer as president of the corporation. A tax lien was first filed against the Bierbrauers' residence on August 23, 1978, and the assessment was reduced to judgment on March 19, 1987, in the amount of $23,512.65. Civil No. 3–85–1608 (D.Minn.).

federal employment taxes for the last three quarters of 1977, a liability of $14,526.33. Thus, when Cecil relinquished his interest in the house, he became insolvent: "the present fair salable value of his assets [was] less than the amount ... required to pay his probable liability on his existing debts as they [became] absolute and matured." Minn.Stat.Ann. § 513.21 (1945).

■ The District Court noted that under the Minnesota Homestead Statute, Minn. Stat.Ann. § 510.01 *et seq.* (1990), the 1978 conveyance could not be set aside as fraudulent by ordinary creditors. Nonetheless, it continued, the Supreme Court in *United States v. Rodgers, supra,* and this Court in *United States v. Pilla,* 711 F.2d 94 (1983), made clear that federal law is superior to Minnesota's homestead law. The 1978 conveyance may be disregarded to satisfy the United States' tax lien, even if it could not be set aside by other creditors. Civil No. 4–87–946, Order at 3–4 (D.Minn. February 7, 1990). This statement of the law is clearly correct. In the words of the Supreme Court, "the use of the power granted by § 7403 is not the act of an ordinary creditor, but the exercise of a sovereign prerogative, ... ultimately grounded in the constitutional mandate to 'lay and collect taxes.'" *United States v. Rodgers,* 461 U.S. at 697, 103 S.Ct. at 2144.

■ We disagree, however, with the next step of the District Court's analysis. The Court decided not to allow the government to satisfy its tax lien by foreclosing on the Bierbrauers' home, believing that its equitable discretion should be exercised in favor of Judy Bierbrauer, the non-delinquent co-owner: "[T]he government's interest in satisfying this particular tax lien is outweighed by the likely prejudice to Judy Bierbrauer, both in personal dislocation costs and the inherent indignity and inequity of being removed from one's home." Order at 6. Although it is true that district courts have some equitable discretion in § 7403 proceedings, the *Rodgers* case restricts the exercise of that discretion to a "fairly limited set of considerations." 461 U.S. at 709–10, 103 S.Ct. at 2150–51. We think the District Court erred as a matter

of law in its application of the *Rodgers* factors to the Bierbrauers' situation.

In *Rodgers,* the Supreme Court listed four factors to be considered in § 7403 proceedings involving property held jointly by a delinquent taxpayer and a non-liable third party. First, a court should consider "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes." Sale of the partial interest may be practically impossible. Or sale of the partial interest may net far less than the market value of the interest if the property were sold as a whole—so much less that the government would be unable to satisfy its tax lien. In either of these situations, the government has a considerable interest in a forced sale of the entire property. Second, a court should consider whether the third party has a "legally recognized expectation" (leaving aside the § 7403 proceeding) that the third party's separate property would not be subject to a forced sale by the delinquent taxpayer or that person's creditors. Third, a court should consider the possibility of undercompensation to the third party, as well as the extent of personal dislocation costs. Finally, a court should compare the character and value of the interests in the property. Whether or not a third party has a possessory interest merits some consideration. And if the non-liable third party has a greater possessory or fee interest than the delinquent taxpayer, so that a forced sale would net the government only a fraction of the value of the property, there may be little reason to allow the sale. 461 U.S. at 710–11, 103 S.Ct. at 2151–52.

The District Court focused solely on the third factor, the prejudice to Judy Bierbrauer from the sale of the couple's home. There was, however, no evidence before it that her personal dislocation costs were greater than in any other foreclosure against a residence to satisfy a tax lien. We respectfully disagree that "the inherent indignity and inequity of being removed from one's home" should automatically tip the scales in Judy Bierbrauer's favor. If

this were so, the government could never foreclose against a jointly owned residence—a result clearly untenable under § 7403. Rather, we think this third factor envisions some special circumstance of prejudice to the non-liable third party. Such a special circumstance might be the potential for undercompensation for the property interest. 461 U.S. at 711, 103 S.Ct. at 2151. There is no evidence that Judy Bierbrauer would be undercompensated for her interest if the property were sold.

The other factors enumerated in *Rodgers*, not discussed by the District Court, all weigh heavily in the government's favor. The first consideration is whether the government could satisfy its tax lien with a forced sale of the delinquent taxpayer's partial interest, rather than a sale of the whole. As applied to this case, in which Cecil and Judy are joint tenants, the question is whether or not Cecil's interest, if it could be sold without dispossessing Judy Bierbrauer, would satisfy the tax lien. Of course, as a practical matter, the sale value of Cecil's interest, as co-owner with Judy Bierbrauer, is minimal for as long as Judy lives and occupies the property. The residence is Judy's homestead property under Minnesota law; if Cecil conveyed his interest, the new co-owner could neither force a sale of the property, nor dispossess Judy Bierbrauer. There is no real prospect that Cecil's interest could be sold separately.

The second factor, whether Judy Bierbrauer has a "legally recognized expectation" that her interest would not be subject to a forced sale, also weighs in the government's favor. It is true that the Minnesota homestead laws provide substantial protection against a forced sale. But it is also true, by the parties' own admission, that Judy Bierbrauer has acted with her husband in such a way as to frustrate the government's tax-collection efforts. In her deposition testimony, Judy stated that the property was conveyed to her in 1978, after her husband started the construction business with his brother, so that "if anything happens, this house is not going up for nobody...." A. 68–69. Cecil admitted that he and his wife have an informal

agreement, whereby his occasional work at a Dairy Queen managed by Judy is not compensated, because his wages would be subject to garnishment for his tax debt. A. 56–57. The Bierbrauers' conduct tilts the balance of legal expectations against them.

Finally, the District Court should have compared the relative character and value of the separate property interests. It is true, but legally irrelevant, that this property formerly belonged to Judy's parents, and that everyone hoped it would remain in her family. Judy Bierbrauer has a possessory interest in the home, but it is no greater than Cecil's interest, and worth no more than about half the value of the property. Thus, the government is not dispossessing an innocent third party who has a substantially greater possessory or fee interest than the delinquent taxpayer's interest.

We are mindful of the Supreme Court's admonition that these factors not be used as a "mechanical checklist." But we are also mindful that "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." 461 U.S. at 711, 103 S.Ct. at 2151. Despite the dislocation costs Judy Bierbrauer will suffer, the government's interest here should be satisfied. That can happen only by selling the Bierbrauers' house. We think, on this record, that the government was entitled to judgment as a matter of law. Accordingly, we reverse the District Court's grant of summary judgment in favor of the defendants in this action, and instruct the Court to enter judgment in favor of the United States.

One additional point merits our attention. There remains some question, raised at the oral argument before this Court, whether the Bierbrauers could execute a mortgage on the property, and thereby borrow enough money from someone to satisfy the tax lien. It seems to us the defendants have had ample opportunity to do so already. Nonetheless, the Bierbrauers may petition the District Court for stay of entry

of judgment pending an attempt to secure a mortgage.

The judgment of the District Court is reversed, and the cause remanded for further proceedings consistent with this opinion.