**UNITED STATES of America, Plaintiff,**

v.

**James HUGHEL, et al., Defendants,**

No. C–3–96–393.

United States District Court, S.D. Ohio, Western Division.

Aug. 5, 1997.

Pamela M. Stanek, United States Attorney's Office—3, Dayton, OH, Leslie M. Singer, U.S. Department of Justice, S. Robert Lyons, U.S. Department of Justice, Washington, DC, for Plaintiff.

Joseph C. Brucker, Springfield, OH, Marie Anne Malloy, National City Bank—2, Columbus, OH, for Defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MERZ, United States Magistrate Judge.

This case is before the Court upon Plaintiff's Motion for Summary Judgment (Doc.

# 9), the Memorandum in Opposition of Defendants James Hughel and Betty Young (Doc. # 10), and the Plaintiff's Reply Memorandum (Doc. # 12).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50)). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than sim-

ply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992)(quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir.1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510.

> The moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *see also, Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir.1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608–09 (6th Cir.1992), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a]

district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Decision are admitted or established by evidence competent under Fed.R.Civ.P. 56(e) and not controverted by opposing competent evidence.

■ In this action and in the instant motion, the United States seeks judgment against Defendant James Hughel for his unpaid Federal Income Tax liability for each of the six taxable years ending December 31, 1980, 1981, 1982, 1983, 1984, and 1986. Defendant James Hughel has not come forward with any evidence that he is not responsible for the tax liabilities assessed against him or that the amounts assessed are incorrect. Accordingly, the United States is entitled to have the assessments reduced to judgment.

The United States also asserts in this action that it has valid federal tax liens on the property at 619 East Rose Street, Springfield, Ohio, which it seeks to have this Court enforce by sale of the property. The undisputed facts regarding that property are that prior to March 12, 1990, it was an asset of the Estate of Charlotte Hughel. At 2:07 p.m. on March 12, 1990, a Certificate of Transfer issued by the Probate Court of Clark County was recorded in the Clark County Recorder's Office conveying that property from the Estate of Charlotte Hughel to James Hughel and Betty Young, Charlotte's children and two of the Defendants in this case. Each child of Charlotte Hughel received an undivided one-half interest in the property which was valued at $25,000 in the estate.

Immediately after recording the Certificate of Transfer, the Clark County Recorder recorded a Quit Claim Deed purporting to convey James Hughel's one-half interest in the Rose Street property to his sister Betty Young. Ms. Young gave her brother no money or other property in exchange for his interest in the property. Rather he quit claimed his interest because he claimed he owed a debt to his parents and because his sister had undertaken the burden of caring for both parents during an extended period during their last illness. In addition, Mr. Hughel had lived in the home beginning in early 1989, and his mother and sister paid all of the expenses and charged him no rent.

■ A taxpayer's failure to pay a federal tax assessment after notice and demand results in a federal tax lien upon all of the taxpayer's property, including property subsequently acquired by the taxpayer. 26 U.S.C. § 6321; *United States v. Dishman Independent Oil, Inc.*, 46 F.3d 523, 525 (6th Cir.1995). Defendants do not contest that notice and demand were sent. The taxes assessed on May 25, 1987; June 1, 1987; and June 22, 1987, were assessed before Mr. Hughel acquired his interest in the Rose Street property on March 12, 1990. Federal tax liens accordingly attached to Mr. Hughel's interest in the property when he acquired it on the latter date. His one-half interest remained subject to the liens even though it was transferred to Betty Young.

■ The tax liens are effective against Betty Young unless she is a purchaser, a judgment lien creditor, mechanics lienor, or holder of a security interest as defined by 26 U.S.C. § 6323. Ms. Young does not claim status as judgment lien creditor, mechanics lienor, or holder of a security interest. She does not qualify as a purchaser under 26 U.S.C. § 6323(h)(6) which defines purchaser as:

"A person who, for adequate and full consideration in money or moneys worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual knowledge."

■ Under Ohio law "[a] bonafide purchaser is one who has purchased property for value without notice of any defects in the title

of the seller," In re Walter, 158 B.R. 984, 985, n.3 (N.D.Ohio 1993) (citing Black's Law Dictionary at page 177, 6th Ed.1990). Ms. Young admitted at deposition that she became aware of the taxes asserted against her brother during his bankruptcy case and therefore before the property was conveyed to her.

■ The United States also asserts that the lien which arose after Mr. Hughel transferred his interest in the Rose Street property to Ms. Young is valid and prior to any interest of Ms. Young because the transfer was fraudulent as to the United States. After the transfer, Mr. Hughel was, on July 16, 1990, assessed income taxes for 1984 in the amount of $17,547.95. Where a taxpayer has fraudulently disposed of property prior to the existence of federal tax liens, the United States has standing to seek relief under the fraudulent conveyance laws of the particular State in which the property is located. *Commissioner v. Stearn*, 367 U.S. 29 (1958); *United States v. Fernon*, 640 F.2d 609 (5th Cir. 1981). Ohio Revised Code § 1336.09 permits a creditor to set aside a fraudulent conveyance. O.R.C. § 1336.04 provides that:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

O.R.C. § 1336.02 provides that:

> A person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and mature.

Under O.R.C. § 1336.03, fair consideration is given for property:

> (A) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or
>
> (B) When such property or obligation is received in good faith to secure a present

advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

■ Both James Hughel and Betty Young testified at their respective depositions that Mr. Hughel was indebted to his parents for moneys which they had advanced to him during their lifetimes in the approximate amount of $23,000. Attached to their Response to the Motion for Summary Judgment is Betty Young's affidavit attaching copies of customer receipts for four cashiers checks which she found in her parent's possession for a total of $13,000 paid to James Hughel at various dates between 1984 and 1988. Ms. Young testified that both she and her brother were of the opinion that she was entitled to receive the property. When her mother died, Ms. Young did not want the house to be in both names because she knew her brother did not "have a dime." She suggested to him that he owed money to repay the loans to his mother and father and so, they having died, he would owe the money to her and he could satisfy that debt by putting the house in her name. However, he could continue to live there because she had promised her mother that she would make sure he had a place to live. Mr. Hughel testified that he felt obligated to do something for his sister for all she had done for their parents and for him, and he had no other way to pay her. He added that it really wasn't paying her anything because she had to pay for taxes and "that type of stuff" (presumably referring to property taxes and maintenance on the property).

As the United States points out in its Reply Memorandum, Mr. Hughel's debt was not to his sister, but to the estate of his mother.[1] Furthermore, while Mr. Hughel and Ms. Young may both have had a moral obligation to assist in the care of their parents, the fact that Ms. Young carried more than her fair share of that moral obligation did not give rise to a legal obligation, the discharge of which constituted fair consideration for Mr. Hughel's half interest in the

1. Although these facts do not appear of record, the Court infers that his father died first and thus his obligation to repay the loan would have passed as an asset from his father to his mother and been an asset of her estate when she died.

house. Therefore, the transfer of the property does not constitute James Hughel's satisfaction of an antecedent debt owed to Betty Young.

■ The Court also finds that the transfer was fraudulent as to the United States. There is no doubt that the United States was a creditor of Mr. Hughel at the time the property was transferred. He contends he was not insolvent at the time of the transfer because he had been discharged in bankruptcy and was of the opinion he was not insolvent because "he felt that the Government owed him money because of the way his bookkeeper had made out the taxes." As the United States points out in its Reply Memorandum, Mr. Hughel was of that opinion in 1988 when he filed his bankruptcy petition. However, by the time the property was transferred in 1990, Mr. Hughel testified:

> "I had no place to live, I had no money, I had no business, I had no income at all....I didn't have any money naturally from the bankruptcy—no social security or nothing. I mean I was totally and absolutely broke."

Ms. Young testified to the same effect during her deposition. She indicated her brother had "no money, no pension, perhaps social security [which we know from Mr. Hughel he did not have] Nothing except his clothes and a little bit of furniture and a real old car." It is plain that Mr. Hughel was insolvent at the time of the transfer.

Finally, Defendants claim that only the interest of James Hughel in the Rose Street property may be sold by virtue of O.R.C. § 2329.01.

■ However, this is a lien foreclosure suit, along with the other relief sought by the United States. Pursuant to 26 U.S.C. § 7403, any property in which the taxpayer has any right, title, or interest is subject to foreclosure so long as other persons having liens upon or claiming any interest in the property are joined as parties in the suit. *United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) quoting 26 U.S.C. § 7403(a) and (b). Section 7403 gives this Court the authority to decree a sale of the entire property and of this distribution of the proceeds of sale according to the interests of the parties and of the United States.

In the *Rodgers* case the Supreme Court held that where a non-delinquent owner has a property interest which will be affected by the sale of the entire property, a court should consider four criteria in determining whether this sale should be ordered: 1) the extent to which the Government's financial interest would be prejudiced if it were limited to the sale of only the partial interest actually subject to the delinquent taxes; 2) whether the third party has a legally recognized expectation that his interest would not be subject to a forced sale by the delinquent taxpayer or his creditors; 3) the possibility that the third party will be prejudiced by under-compensation for his interest or by personal dislocation costs; and 4) the relative character and value of the respective possessory and fee interests in the property. 461 U.S. at 710–11, 103 S.Ct. 2132.

■ In considering those four factors, the Court finds first of all that the sale of a 50% undivided interest in residential real estate, a single family home so far as the Court is advised, would substantially prejudice the United States' interest since it is very unlikely there would be a market for such an undivided one-half interest as compared with the sale of the entire property. Ms. Young has no legally recognized expectation that her interest would not be subject to forced sale since she knew of her brother's insolvency at the time of the conveyance to her. See *United States v. Bierbrauer,* 936 F.2d 373, 376 (8th Cir.1991). Ms. Young will not be prejudiced by the sale in terms of personal dislocation costs or under compensation. There is no evidence before the Court that the market for real property in the vicinity of the Rose Street property is in anyway presently depressed. Mr. Young does not live there, but lives instead at 1127 Sylvan Shores South. Finally, it is James Hughel who has a possessory interest in the property if any Defendant does. The value of the United States judgment, assuming the house was properly valued in the estate, will exceed Mr. Hughel's one-half interest. Therefore, the entire property should be sold.

## CONCLUSION

The Court finds there are no genuine issues of material fact and that the United States is entitled to judgment as a matter of law. Judgment will enter in favor of the United States and against the Defendant James Hughel reducing the tax assessments to judgment in the amount $140,789, together with interest thereon at the rate allowed by law from June 17, 1996 until paid. The National City Bank of Columbus, having disclaimed any interest in the property, is ordered dismissed as a defendant without cost. Government's counsel shall prepare an appropriate decree of foreclosure and an order for sale.