UNITED STATES of America,
Plaintiff,

v.

Joann Maxine Monckton HUNWARD-
SEN; Earl Eldon Hunwardsen;
Trimm Farms, By and Through Its
Agent Blanche Monckton McLeish;
Sandra Jo Hunwardsen, a/k/a Sandra
Georguson; Candace Marie Hunward-
sen, a/k/a Candace Cook; Arthur Hen-
ry Monckton; and Monckton Farm, a
partnership, Defendants.

No. C 96–4092 DEO.

United States District Court,
N.D. Iowa,
Western Division.

Feb. 12, 1999.

Joan Stentiford Ulmer, U.S. Department of Justice, Tax Division, Washington, DC, for U.S.

JoAnn Maxine Monckton-Hunwardsen, pro se.

Earl Eldon Hunwardsen, pro se.

Trimm Farms, pro se.

Sandra Jo Hunwardsen Georguson, pro se.

Candace Marie Hunwardsen, pro se.

Andrew T. Orr, Sioux City, IA, for Defendants Arthue Henry Monckton, Monckton Farm.

George L. Hirschbach, George F. Madsen Marks Madsen & Hirschbach, Sioux City, IA, for Defendant Bruce Sorensen.

## ORDER

ZOSS, United States Magistrate Judge.

### I. INTRODUCTION

The United States instituted this action on September 17, 1996, pursuant to 26 U.S.C. §§ 7401 and 7403, to foreclose federal tax liens on real estate in Woodbury County, Iowa. On February 23, 1998, a judgment for taxes, penalties and interest was entered in favor of the United States and against certain of the defendants, and the real estate was ordered foreclosed and sold to satisfy the judgment (Docket No. 86). The judgment was amended on February 24, 1998 (Docket No. 88), and again on October 16, 1998 (Docket No. 111).

On December 10, 1998, the United States moved for entry of an order of private sale of real estate authorizing the sale of the real estate to Bruce Sorensen (Docket No. 118). In its Memorandum of Points and Authorities in Support of Motion to Add Substitute Party (Docket No. 117), the government alleged the following:

2. Arthur Henry Monckton was named as a defendant in the action because he owned a one-half share of the real property as joint tenant with his sister, Joann Maxine Monckton Hunwardsen. The government does not seek to reduce any assessments to judgment against Arthur Henry Monckton in the instant litigation.

3. On or about October 6, 1998, Arthur Henry Monckton sold his interest in the subject real property to Bruce Sorensen.

On January 25, 1999, the government filed a Motion to Withdraw Motion for Approval of Private Sale (Docket No. 131), asking that the court order the property sold at public auction. In its Memorandum of Points and Authorities in Support of Motion to Withdraw Motion for Approval of Private Sale (Docket No. 132), the government stated the following:

2. Pursuant to that Order, a public auction was scheduled to take place on December 29, 1998. Prior to that time, the United States was approached by an individual, Bruce Sorensen, who offered to purchase the above-described property in a private sale pursuant to 28 U.S.C. § 2001(b). At that time, the United States believed that a private sale would be in the best interests of the government as well as the defendants. It now appears that there are multiple entities interested and qualified to buy the property and that the interests of the government and the defendants will be better served by selling the property at a public auction, pursuant to 28 U.S.C. § 2001(a).

On February 1, 1999, defendant Sorensen filed a Motion for Private Sale of Real

Property and Objection to Plaintiff's Motion to Withdraw Motion for Private Sale (Docket No. 133). Also on February 1, 1999, Sorensen filed a Motion to Prohibit Walter and Violet M. Reinholdt from Bidding (Docket No. 135).

On February 2, 1999, the Honorable Donald E. O'Brien referred these proceedings to the undersigned United States Magistrate Judge. Also on February 2, 1999, the court entered an order that all pending matters would be heard on Tuesday, February 9, 1999.

A hearing was held on February 9, 1999. Appearing for the United States was Joan Stentiford Ulmer. Appearing on behalf of Bruce Sorensen was George F. Madsen. Also appearing at the hearing were Richard H. Moeller and Jeffery A. Johnson, representing the interests of Walter and Violet M. Reinholdt. The court has heard the arguments and representations of the parties, and now considers the pending motions to be fully submitted.

## II. FACTS OF THE CASE

This dispute concerns how the United States will sell certain real estate that has been foreclosed by the Internal Revenue Service ("IRS"). The dispute is complicated by some interesting developments in the case.

Before the foreclosure action, Arthur Henry Monckton ("Monckton") owned an undivided one-half interest in the real estate. His interest was not subject to any tax liens, but he agreed with the IRS to the sale of the entire property, with the understanding that he would receive one-half of the net proceeds from the sale. Before the sale could be concluded, however, Monckton sold his interest to Bruce Sorensen ("Sorensen") for $196,000. Sorensen was not in agreement with Monckton's arrangement with the IRS, so he approached the United States and offered to pay $200,000 for the government's interest in the property. The IRS initially agreed to the proposal, and filed a Motion

for Private Sale of Real Estate on December 10, 1998 (Docket No. 118).

After the motion was filed, the IRS received several inquiries from parties interested in bidding on the property, and on January 25, 1999, the government decided to move to withdraw its motion for approval of private sale (Docket No. 131). In response, Sorensen filed his own motion for private sale, and at the same time objected to the government's motion to withdraw its motion for private sale (Docket No. 133). Sorensen also filed a motion seeking to prohibit Walter and Violet M. Reinholdt from bidding at the sale of the property (Docket No. 135). Sorensen alleged that the Reinholdts were the tenants on the property during the 1998 crop year, but had failed to make disclosure "to the parties and the Court as to the terms of the lease and accounting for payments under the lease of the real estate involved in this litigation." *Id.* at 3. Sorensen therefore asked the court to enter an order prohibiting the Reinholdts, or anyone acting on their behalf, from bidding on the real estate unless they first make the requested disclosures and until they disclaim any interest in the real estate for the 1999 crop year.

At the hearing, these factual and legal disputes boiled down to two issues: (1) should the United States be permitted to sell the interests of all parties in the real estate, or only the undivided one-half interest in the real estate previously held by the taxpayers; and (2) should the court order a private sale of the real estate to Sorensen under 28 U.S.C. § 2001(b), or should the court order a public sale under 28 U.S.C. § 2001(a).

### 1. Should the Entire Property be Sold?

Sorensen argues that since Sorensen's one-half interest in the real estate is not subject to the IRS lien, the United States "has no right to sell Sorensen's one-half interest in the real estate." Brief in Support of Motion for Private Sale, filed Feb-

ruary 9, 1999, page 6. As support for his position, Sorensen cites the court to *United States v. Heasley*, 283 F.2d 422 (8th Cir.1960). The United States, on the other hand, argues that the sale of the entire property is specifically authorized by *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). *See also United States v. Bachman*, 584 F.Supp. 1002 (S.D.Iowa 1984).

The present action was brought pursuant to 26 U.S.C. § 7403, which authorizes the United States to file a civil action

to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

In *Rodgers*, the Supreme Court answered the question of "whether § 7403 empowers a federal district court to order the sale of a family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness, but in which the taxpayer's spouse, who does not owe any of that indebtedness, also has a separate 'homestead' right as defined by Texas law." *Id.* at 680, 103 S.Ct. at 2136. The Supreme Court held that "the statute does grant power to order the sale, but that its exercise is limited to some degree by equitable discretion." *Id.* The court also held that "if the home is sold, the nondelinquent spouse is entitled, as a part of the distribution of proceeds required under § 7403, to so much of the proceeds as represents complete compensation for the loss of the homestead estate." *Id.*

The Supreme Court noted that under Texas law, each spouse in a marriage is given a separate and undivided possessory interest in a homestead which may not be compromised by the other spouse. *Id.* at 685, 103 S.Ct. at 2138. However, the court also pointed out that § 7403(a) provides

that the government may "subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." *Id.* at 692, 103 S.Ct. at 2142. The court then noted that " § 7403(c) provides that the district court should 'determine the merits of all claims to and liens upon the property, and in all cases where a claim or interest of the United States therein is established, may decree a sale of such property ... and a proper distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.' " *Id.* at 693, 103 S.Ct. at 2142.

The Court read these statutes "to contemplate, not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *Id.* at 694, 103 S.Ct. at 2142. The court recognized that § 7403 provides the government with a powerful and potentially dangerous tool, but pointed out the following:

> To the extent that third-party property interests are "taken" in the process, § 7403 provides compensation for that "taking" by requiring that the court distribute the proceeds of the sale "according to the findings of the court in respect to the interests of the parties and of the United States."

*Id.* at 697–698, 103 S.Ct. at 2144–45.

In addition, the court, after a detailed examination of § 7403, concluded that district courts "may exercise a degree of equitable discretion in § 7403 proceedings, and need not always go ahead with a forced sale authorized by § 7403." *Id.* at 709, 103 S.Ct. at 2150–51.[1]

---

1. The court stated that a district court should consider the following in determining whether to exercise this discretion: (1) the extent to which the government's financial interests

would be prejudiced if it were relegated to a forced sale of the partial interest; (2) whether the third party with a non-liable separate interest in the property would, in the normal

*Rodgers* authorizes the court in the present case to order the sale of all of the real estate that has been foreclosed, including interest in the real estate held by Sorensen. Sorensen's reliance on *O'Hagen* is misplaced. In that case, the IRS administratively levied on Mr. O'Hagen's interest in real estate which he owned jointly with his wife. The property was the O'Hagen's homestead and was held by them jointly with a right of survivorship. The government imposed an assessment against Mr. O'Hagen (and not Mrs. O'Hagen) for unpaid federal income tax liabilities, and then seized the homestead property after having levied on Mr. O'Hagen's interest in the property pursuant to 26 U.S.C. § 6331. The government then advertised for sale Mr. O'Hagen's interest in the real estate. Mrs. O'Hagen filed an action pursuant to 26 U.S.C. § 7426 to enjoin the IRS from selling her husband's interest in the real estate. The district court, on the motion of Mrs. O'Hagen, enjoined the forced sale of Mr. O'Hagen's interest. The United States appealed to the Eighth Circuit, arguing that the district court lacked subject matter jurisdiction because of the Anti–Injunction Act, 26 U.S.C. § 7421. Relying on a statutory exception to the Anti–Injunction Act in 26 U.S.C. § 7426(a), which expressly gives the district court jurisdiction to grant injunctive relief "[i]f a levy or sale would irreparably injure rights in the property which the court determines to be superior to the rights of the United States in such property," the Eighth Circuit concluded that the district court had jurisdiction to enjoin the sale of Mr. O'Hagen's right to use and occupy the homestead property, but could not enjoin the government from conveying Mr. O'Hagen's survivorship interest. *Id.* at 778, 103 S.Ct. 2132.

The *O'Hagen* case specifically dealt with the rights of the IRS after an administrative levy, which "only authorizes the IRS to 'levy upon all property and rights to property' *belonging to the delinquent taxpayer*, . . . 26 U.S.C. § 6331." *Id.* at 779, 103 S.Ct. 2132 (emphasis provided). *O'Hagen* has no applicability to a foreclosure and sale under § 7403, such as the one in the present case, which does not involve an administrative seizure of property belonging to a delinquent taxpayer, but a judicial foreclosure and sale pursuant to 26 U.S.C. § 7403(a), which authorizes the foreclosure and sale of "any property, of whatever nature," in which the taxpayer has any right, title, or interest. As the Eighth Circuit Court of Appeals stated in *United States v. Bierbrauer*, 936 F.2d 373, 374 (8th Cir.1991):

> Section 7403 of the Internal Revenue Code authorizes a federal district court to order a sale of property in which a delinquent taxpayer has an interest in order to satisfy that taxpayer's debt. A district court may do so even though an innocent third party also has an interest in the property, so long as the third party receives compensation.

*See also, Bachman,* 584 F.Supp. at 1004.

Even though the court has found that the United States may sell the entire property involved in the present case, the court may nevertheless, in the exercise of its discretion, determine that it would be inequitable to do so. *See supra* note 1; *Bierbrauer,* 936 F.2d at 375–376; *Bachman,* 584 F.Supp. at 1005. However, as the Supreme Court stated in *Rodgers*, "the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the government's paramount interest in prompt and certain collection of delinquent taxes." *Rodgers,* 461 U.S. at 711, 103 S.Ct. at 2152.

Before it exercises this discretion, the court must first consider the extent to which the government's financial

course of events, have a legally recognized expectation that his or her separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors;

(3) the likely prejudice to the third party; (4) the relative character and value of the non-liable and liable interests held in the property. *Id.,* at 710–11, 103 S.Ct. at 2151–52.

interests would be prejudiced if it were forced to sell the partial interest in the real estate actually liable for delinquent taxes rather than the entire real estate. Sale of a partial interest to anyone other than Sorensen may be practically impossible, and would, in any event, most likely net far less than the market value of the interest if the property as a whole were sold. *Bierbrauer,* 936 F.2d at 375. Second, the court should consider whether the third party had a "legally recognized expectation" that the third party's separate property would not be subject to forced sale by the delinquent taxpayer's creditors. Here, Sorensen purchased Monkton's interest in the property on or about October 6, 1998, after judgment had already been entered foreclosing the real estate. He cannot seriously claim that he had an expectation that the property would not be subject to forced sale. *Id.* Third, the court should consider the possible under-compensation to the third party, as well as the extent of personal dislocation costs. Sorensen does not live on the property, so he will have no dislocation costs. Furthermore, Sorensen is unlikely to be under-compensated. He can protect the value of his interest in the real estate (for which he paid $196,000) by bidding at least $392,000 (against which he would be entitled to a fifty percent credit for his ownership interest in the real estate[2]). *Id.* Since he has already offered to pay $200,000 for a one-half interest in the real estate, he has, in effect, agreed to pay $396,000 for the real estate. Finally, the court should compare the character of the value of the interests of the property. *Id.* Here, the interests are equal. In sum, these factors weigh strongly against the court's exercising its discretion to not foreclose the interests of the third party, and the court will not do so.

## 2. Public Sale or Private Sale?

■ The court has broad discretion in setting the terms and conditions of a sale

under 28 U.S.C. § 2001. *United States v. Branch Coal Corp.,* 390 F.2d 7, 10 (3d Cir.), *cert denied,* 391 U.S. 966, 88 S.Ct. 2034, 20 L.Ed.2d 878 (1968); *see United States v. Garcia,* 474 F.2d 1202, 1206 (5th Cir.1973). Sorensen has filed a motion for private sale of the real estate (Docket No. 133), as is his right under § 2001(b). *Don Gastineau Equity Trust v. United States,* 687 F.Supp. 1422, 1427 (C.D.Cal.1987) (any person authorized by 28 § 2001(b) may move for an order for private sale of real property). The government has asked the court to sell the real estate at public sale under 28 U.S.C. § 2001(a).

Section 2001 provides as follows:

(a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.

\* \* \* \* \* \*

(b) After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price

---

2. The IRS conceded at the hearing that Sorensen would only have to produce one-half of

the purchase price at any sale.

less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001(a) (1994). Thus, the court must decide whether, based on the record made by the parties, the best interests of the estate will be served by a public or a private sale.

There is little evidence in the record to assist the court in making this determination. Sorensen argues that the $196,000 he paid for a one-half interest in the real estate, in what he represents was an arms-length transaction, is strong evidence of the value of the other one-half interest. As evidence of the arms-length nature of the transaction, he points out that Monckton tried to back out of the transaction, and that Sorensen had to file suit to force Monckton to go through with the sale. Sorensen submits that his offer of $200,000 for the other one-half interest is, therefore, fair, and that the court should approve a private sale to him at this price as in the best interests of the estate. He further points out-that the estate is protected from any significant risk by the procedures set out in § 2001(b) (e.g., appraisals, published notice, etc.). In response, the United States simply argues that it hopes to obtain a higher price at a public sale.

■ The court believes that the best way to look at this issue is to examine how the effects of each party's desired procedure for sale of the real estate will likely affect what the estate realizes from that sale. If the court orders a private sale to Sorensen, the estate will receive $200,000 (less costs) from the foreclosure, which the United States will apply to a total tax liability of approximately $400,000. If the court orders a public sale of the property, the estate will receive an unknown amount, determined by the highest bid, of which one-half (after costs) will be paid to Sorensen and the remainder will be applied to the total tax liability.

The court cannot determine whether or not a public sale will produce a price higher or lower than what Sorensen has already offered because the parties have submitted no evidence to establish the value of the real estate.[3] However, the IRS has the most to lose, and the most to gain, from a public sale. If the public sale price is higher than $400,000, then the estate, and the IRS, will benefit from the public sale. If the public sale price is less than $400,000, then the estate, and the IRS, will realize less from the public sale than if the real estate were sold to Sorensen at private sale. If this is a risk that the IRS wishes to take, the court does not see why it should interfere.

Of course, if the real estate sells for less than $392,000, then Sorensen will, in effect, lose money on the one-half interest in the real estate he purchased for $196,000, since he would receive less than $196,000 from the sale proceeds. However, as the court has already pointed out, he can protect himself from this risk by bidding at least $392,000 for the property at the public sale. This should be no problem for him, since he has already indicated that he will pay $396,000 for the real estate.

In balancing all of these interests, the court finds that a public sale would be in the best interests of the estate.

**3.** Sorensen argues that his "arms-length" purchase of a one-half interest in the real estate for $196,000 is strong evidence of the property's value. The court does not agree. The circumstances of the sale, which occurred during the course of an IRS foreclosure action, are different from a normal sale and purchase situation. Furthermore, Sorensen purchased only a one-half interest in the real estate. The price paid for a partial interest in real estate does not necessarily reflect the value of a full interest in the real estate.

### III. CONCLUSION

For all the foregoing reasons the government's Motion for Private Sale of Real Property (Docket No. 118) is **denied as moot,** and Motion to Withdraw Motion for Approval of Private Sale (Docket No. 131) is **granted.** Sorensen's Motion for Private Sale of Real Property (Docket No. 133) and Motion to Prohibit Walter and Violet M. Reinholdt from Bidding (Docket No. 135) are **denied.**

**IT IS SO ORDERED.**