# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3751
_____

United States of America

*Plaintiff - Appellee*

v.

Ronald E. Byers; Deanna L. Byers

*Defendants - Appellants*

Hennepin County, Minnesota

*Defendant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 22, 2024
Filed: April 7, 2025

_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

_____

SMITH, Circuit Judge.

Ronald E. Byers (Ronald) owes the United States (government) for unpaid income taxes, interest, and penalties. The government brought suit to enforce its federal tax liens through the judicial sale of Ronald's home, which he alone owns but shares with his wife, Deanna L. Byers (Deanna). All parties agreed that the government may sell the home and apply some of the proceeds to Ronald's tax debt. But the Byerses argued that Deanna is entitled to half of the proceeds of the judicial sale because the property is the marital homestead. The parties filed cross-motions for summary judgment. The district court[1] granted the government's motion and denied the Byerses' motion, holding that Deanna lacked a property interest in the home and was not entitled to any portion of the sale proceeds. On appeal, the Byerses again argue that Deanna is entitled to half of the proceeds of the judicial sale. We affirm.

## I. *Background*

Ronald owns property located at 16808 Prospect Place in Wayzata, Minnesota (Wayzata Property). Ronald is the sole titleholder of the Wayzata Property. Ronald acquired it by a personal representative's deed in 1990; he recorded the deed in Hennepin County on June 26, 1990. Hennepin County classifies the Wayzata Property as a homestead. Approximately two years after acquiring the Wayzata Property, Ronald and Deanna married.

In February 1994, Ronald and Deanna, as husband and wife, executed a new mortgage on the Wayzata Property in the amount of $59,932, which paid off the existing mortgage. Ronald and Deanna contributed equally to the mortgage payments until the mortgage was fully satisfied in 2009. But, at all times, Ronald has remained the sole titleholder to the Wayzata Property.

---

[1]The Honorable Patrick J. Schiltz, Chief Judge, United States District Court for the District of Minnesota.

Ronald owes the government $327,419.11 for unpaid income taxes, interest, and penalties. The government made multiple tax assessments against Ronald. As a result, multiple federal tax liens attached to his property interests, including in the Wayzata Property. The government brought suit to reduce Ronald's tax assessments to judgment and to enforce its liens by way of a judicial sale of the property. *See* 26 U.S.C. § 7403. In addition to Ronald, the government named two other defendants who may claim an interest in the Wayzata Property: Deanna and Hennepin County. *See id.* § 7403(b). Hennepin County and the government stipulated that any lien interest that Hennepin County has in the Wayzata Property as a result of unpaid property taxes is superior to the government's lien interest in the property as a result of unpaid income taxes. Although the Byerses agreed that the government may sell the Wayzata Property, they argued that Deanna is entitled to half of the sale proceeds.

The government and the Byerses filed cross-motions for summary judgment. The government argued that it is entitled to all proceeds of the sale. The Byerses did not argue that Deanna could block the sale or that she holds an interest in the property as a joint tenant or as a tenant in common. *See* Minn. Stat. § 500.19, subd. 1. Instead, the Byerses argued that Deanna has a property interest in the Wayzata Property as the marital homestead, pursuant to Minn. Stat. § 507.02, and, therefore, is entitled to half of the proceeds from the sale of the Wayzata Property.

The district court granted the government's motion and denied the Byerses' motion, concluding that Deanna lacks a property interest in the Wayzata Property and thus is not entitled to any portion of the sale proceeds. The court reasoned that Minn. Stat. § 507.02 "alter[ed] *Ronald's* property interest in the homestead by forbidding him from conveying that interest without the approval of his spouse." *United States v. Byers*, 699 F. Supp. 3d 774, 780 (D. Minn. 2023). But Deanna "does not *have* a property interest that can be altered by § 507.02. And by limiting the property right of a spouse who owns the homestead, § 507.02 does not somehow create a property right in a spouse who does *not* own the homestead." *Id.* According to the court, it did

not matter "whether the property interest to which the government's lien has attached includes the right to unilaterally convey the property. Section 7403 gives the [c]ourt the authority to sell the entire property and distribute the proceeds." *Id.* at 782. The court concluded that Deanna did not "hold[] an interest in the Wayzata Property that is 'the sort of property interest for whose loss an innocent third-party must be compensated.'" *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 698 (1983)).

As a result, the district court ordered that (1) Ronald is liable to the government "in the amount of $327,491.11, plus further interest and other statutory additions"; (2) the government has "valid and subsisting federal tax liens that attached to" the Wayzata Property; (3) the government's federal tax liens are enforced against the Wayzata Property; (4) the government is authorized to sell the Wayzata Property; (5) Deanna lacks a property interest in the Wayzata Property and is not entitled to any of the sale proceeds; and (7) the net proceeds from the sale of the Wayzata Property must be applied to satisfy Ronald's unpaid federal tax liabilities, subject to Hennepin County's proven lien priority interest. *Id.* at 784.[2]

---

[2]After the parties submitted briefing, the district court denied the Byerses' motion to stay proceedings pending appeal and granted the government's motion to appoint a receiver to sell the Wayzata Property. The court entered an order confirming the judicial sale. This sale does not moot or otherwise affect our jurisdiction. The district court's summary-judgment order was a final, appealable order, which we have jurisdiction to review. *See United States v. Williams*, 796 F.3d 815, 817 (7th Cir. 2015) (holding that "a judgment foreclosing a federal tax lien and specifying how the proceeds are to be applied is appealable because it ends the litigation and leaves nothing but execution of the court's decision, the standard definition of 'final' under § 1291"); *United States v. Robbin*, 798 F. App'x 48, 49 (8th Cir. 2020) (unpublished per curiam) ("In this action brought by the United States to reduce tax assessments to judgment and enforce tax liens, [the defendants] appeal following the district court's entry of an order of sale. To the extent the [defendants] challenge the district court's earlier grant of summary judgment . . . , we dismiss the appeal because the notice of appeal is untimely as to those orders." (footnote omitted)); *cf. United States v. Fitzgerald*, 109 F.3d 1339, 1342 (8th Cir. 1997) (holding court lacked jurisdiction

## II. *Discussion*

On appeal, the Byerses reassert their argument that Deanna has a property interest in the Wayzata Property pursuant to Minn. Stat. § 507.02 and is therefore entitled to half of the proceeds from the sale of the property.

A taxpayer's failure to pay an assessed tax liability after notice of the assessment and demand for payment results in an automatic lien in the government's favor on all property and rights belonging to the taxpayer. *See* 26 U.S.C. §§ 6303, 6321–22; *see also United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719–20 (1985). "A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes." *Nat'l Bank of Com.*, 472 U.S. at 720. "Section 7403 [of 26 U.S.C.] . . . is one of a number of distinct enforcement tools available to the United States for the collection of delinquent taxes." *Rodgers*, 461 U.S. at 682. It "authorizes the judicial sale of certain properties to satisfy the tax indebtedness of delinquent taxpayers." *Id.* at 680. In a suit for judicial sale, the district court must "finally determine the merits of all claims to and liens upon the property," and, if the property is sold, "decree . . . a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c).

Thus, "[§] 7403 . . . authorizes a federal district court to order a sale of property in which a delinquent taxpayer has an interest in order to satisfy that taxpayer's debt

on appeal with regard to issues determined by summary-judgment order in foreclosure proceedings, including debtors' claims regarding purported rights to mediation and loan preservation services, given failure of debtors and senior lienholder to file timely notice of appeal from order); *United States v. Stute*, 402 F.3d 820, 823 (8th Cir. 2005) (holding court lacked jurisdiction on appeal to review summary-judgment motion foreclosing mortgage held by the government and ordering the property sold because the notice of appeal was untimely).

. . . . even though an innocent third party also has an interest in the property, so long as the third party receives compensation." *United States v. Bierbrauer*, 936 F.2d 373, 374 (8th Cir. 1991) (citing 26 U.S.C. § 7403(c); *Rodgers*, 461 U.S. at 693–94). "Foreclosure and forced sale, with proceeds of the sale divided equitably between the United States and other parties claiming an interest in the property, will normally be the proper resolution of a § 7403 action." *United States v. Barczyk*, 434 F. App'x 488, 490 (6th Cir. 2011) (unpublished per curiam) (citing *Rodger*s, 461 U.S. at 693–94).

The Internal Revenue Code "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *Nat'l Bank of Com.*, 472 U.S. at 722 (internal quotation marks omitted). As a result, "[w]e look to state law to define [Deanna's] interest in the homestead property." *O'Hagan v. United States*, 86 F.3d 776, 779 (8th Cir. 1996).

There is no dispute that Ronald is the sole title holder of the Wayzata Property, which Hennepin County classifies as a homestead, and owns the property in fee simple. *See* Appellants' Br. at 9 ("Ronald['s] . . . ownership of the Property is a fee simple estate."). He never transferred any interest in the Wayzata Property to Deanna. Thus, the question is whether Minnesota law affords Deanna, although not an owner of the Wayzata Property, a property interest in it and an entitlement to some of the proceeds from its sale. The Byerses argue that "Deanna Byers holds a present, vested, choate, and inalienable interest and property right in the Property by virtue of the Byers[es]' marriage and applicable Minnesota law." *Id.* at 10 (citing Minn. Stat. § 507.02).

Minnesota law "defines the homestead as the 'house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated to the amount of area and value hereinafter limited and defined.'" *Marine Credit Union v. Detlefson-Delano*, 830 N.W.2d 859, 863 (Minn. 2013) (quoting Minn. Stat. § 510.01). The homestead is "exempt from seizure or sale . . . on account

of any debt not lawfully charged thereon in writing." Minn. Stat. § 510.01. "[A] central feature of the homestead exemption is that it extends" to the debtor and the debtor's spouse. *Aasen v. Macbride*, No. A17-0592, 2017 WL 6567662, at *3 (Minn. Ct. App. Dec. 26, 2017). The homestead exemption provides that "[i]f the debtor [is] married[,] the homestead title may be vested in either spouse, and the exemption shall extend to the debts of either or of both." Minn. Stat. § 510.04.[3]

"In addition to the homestead exemption[], Minnesota law provides the owner's spouse with further protections designed to preserve the family homestead." *United States v. Pilla*, No. CV 3-76-196, 1986 WL 1498301, at *3 (D. Minn. Apr. 25, 1986), *aff'd*, 808 F.2d 841 (8th Cir. 1986). For example, under Minnesota law, "[i]f the owner [of a homestead] is married, no conveyance of the homestead . . . shall be valid without the signatures of both spouses." Minn. Stat. § 507.02. Thus, a spouse is prohibited, "except under circumstances not applicable here, from unilaterally conveying the homestead. A conveyance of the homestead by a married person without the signatures of both spouses is not merely voidable but is void." *State v. Cummings*, 2 N.W.3d 528, 534 n.5 (Minn. 2024) (internal quotation marks omitted); *see also First Fiduciary Corp. v. Blanco*, 276 N.W.2d 30, 33 (Minn. 1979) ("[W]here a deed to a homestead is not executed by one of the spouses, the transfer is wholly void, not merely voidable, regardless of the equities of the matter."); *Pilla*, 1986 WL 1498301, at *3 ("[O]ne spouse may not transfer an interest in the homestead without the signature of the other spouse.").

The Byerses rely primarily on *Rodgers* to argue that § 507.02 affords Deanna "a legitimate property interest that must be protected in the [g]overnment's tax lien sale." Appellants' Br. at 16. "*Rodgers* involved § 7403 and the Texas homestead law, which, like Minnesota's, provides non-debtor spouses with a great deal of protection." *United States v. Pilla*, 711 F.2d 94, 96 (8th Cir. 1983). *Rodgers* "held

---

[3]There are, however, exceptions to the homestead exemption. *See id.* § 510.05.

-7-

that when both a non-debtor and a debtor held interests in property, the property itself, rather than merely the debtor's interest, could be sold to satisfy the tax obligations of the debtor." *Id.* (citing *Rodgers*, 461 U.S. at 692–94). The Court concluded that "the homestead law's prohibition on foreclosure for the debts of one spouse does not apply" because "the IRS has rights superior to those of an 'ordinary creditor,' since it is . . . exercising 'a sovereign prerogative . . . ultimately grounded in the constitutional mandate to "lay and collect taxes."'" *Id.* (second ellipsis in original) (quoting *Rodgers*, 461 U.S. at 697).

> But, relevant to the present case, the Court also recognized that

> homestead interests of a non-debtor spouse, while not preventing a sale, must be recognized. The Court found that § 7403's requirement that the court "finally determine the merits of all claims . . . on the property" included the obligation to consider the homestead interest of a non-debtor spouse and, *when that interest rises to the level of a property right*, to compensate the spouse for that interest. 461 U.S. at [696], 103 S. Ct. at 2144. The Court further noted that some equitable discretion was vested in the courts to deny the government's petition to foreclose in certain circumstances. 461 U.S. at [705–06], 103 S. Ct. at 2149.

*Id.* (emphasis added) (ellipsis in original).

The Court concluded that based on "the nature of the homestead estate in Texas," the non-debtor spouse had "the sort of property interest for whose loss an innocent third-party must be compensated under § 7403." *Rodgers*, 461 U.S. at 698. The Texas Constitution, similar to Minn. Stat. § 507.02, provides that "the owner or claimant of the property claimed as a homestead [may not], if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law." *Rodgers*, 461 U.S. at 684–85 (alteration in original) (quoting Tex. Const., art. 16 § 50). "Equally important," the Texas Constitution also states:

-8-

On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction to use and occupy the same.

*Id.* at 685 (quoting Tex. Const., art. 16 § 50). The provisions' effect "is to give each spouse in a marriage a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs." *Id.* Texas courts have "repeatedly emphasized . . . that the Texas homestead right is not a mere statutory entitlement, but a *vested property right*." *Id.* at 686 (emphasis added). According to the Texas Supreme Court, "a spouse 'has a vested estate in the land of which she cannot be divested during her life except by abandonment or a voluntary conveyance in the manner prescribed by law.'" *Id.* (quoting *Paddock v. Siemoneit*, 218 S.W.2d 428, 436 (Tex. 1949)).

*Rodgers* "necessarily rested upon the determination that the Texas homestead right was a vested property right." *Pilla*, 1986 WL 1498301, at *4. But

Minnesota homestead laws . . . differ in one crucial respect from the homestead interests arising under Texas law—Minnesota's homestead laws do not provide the spouse with a vested estate in the property. Minnesota law provides only that the spouse has a contingent interest in the homestead, during marriage, which vests upon the owner's death. *Snortum v. Snortum*, 155 Minn. 230, 233–34, 193 N. W. 304, 306 (1923). Unlike the homestead interest in Texas law which is an estate in the property itself vesting at marriage, the homestead interest under Minnesota law becomes a vested right in the property only upon the

death of the owner. *See Snortum v. Snortum*, *supra*. *See also Estate of Johnson v. C.I.R.*, 718 F.2d 1303, 1309 (5th Cir. 1983) (emphasizing the unique nature of the homestead interest in Texas). The contingent nature of the homestead interest in Minnesota is further demonstrated by the fact that divorce terminates the rights of the non-owner spouse in the property. *Kern v. Field*, 68 Minn. 317, 318, 71 N.W. 393 (1897); *Gummison v. Johnson*, 149 Minn. 329, 331, 183 N.W. 515 (1921).

*Id.*

Although "Minnesota homestead laws," including § 507.02, afford Deanna "extensive protection to safeguard her rights and interests in the homestead property owned by [Ronald]," they "do not vest in [Deanna] a property interest which rises to the level of that recognized under Texas law in *United States v. Rodgers*, 461 U.S. 677." *Id.* As a result, Deanna's "homestead interest in the [Wayzata Property] is not in the nature of a property right for which the government need compensate in a forced sale action under 26 U.S.C. § 7403." *Id.*[4] The district court did not err in

---

[4]In addition to *Rodgers*, the Byerses rely on *Marshall v. Marshall*, 921 F. Supp. 641 (D. Minn. 1995), *reconsideration granted*, *opinion vacated on other grounds* (Jan. 29, 1996). *Marshall*, unlike the present case, involved a challenge to the government's attempt to enforce a lien "pursuant to the administrative procedures set out in 26 U.S.C. § 6331." *Id.* at 642–43. In a lien proceeding, the government "'steps into the shoes' of the *delinquent taxpayer*" and "'acquires whatever rights the *taxpayer himself* possesses' in the homestead property." *Id.* at 643 (emphases added) (quoting *Nat'l Bank of Com.*, 472 U.S. at 724). An "important distinction [exists] between the power of sale under § 7403 . . . and the power of administrative levy [under § 6331]." *Rodgers*, 461 U.S. at 702 n.31; *see also Marshall*, 921 F. Supp. at 645 n.4 ("Several courts have held that the IRS may levy upon and sell a nondelinquent spouse's portion of the homestead, notwithstanding statutory provisions to the contrary, using the *judicial proceeding* called for under 26 U.S.C. § 7403. The IRS did not pursue a judicial proceeding to levy on Mr. Marshall's property. The cases upon which it relies to justify [the] sale at issue today involve judicial levies under § 7403, not administrative levies under § 6331."). "That is why

determining that Deanna lacked a present property interest in the home and granting summary judgment to the government.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

the *Marshall* court focused on how § 507.02 modified the 'shoes' into which the government had stepped, and why the *Marshall* court ultimately found that the government had not acquired the right to convey the levied property without the nondelinquent spouse's consent." *Byers*, 699 F. Supp. 3d at 781 (citing *Marshall*, 921 F. Supp. at 645–46).